ESTHER GARCÍA PAGÁN, demandante y recurrente, *v.* SHI-
LEY CARIBBEAN, SHILEY LABORATORIES, INC. y PFI-
ZER, INC., demandadas y recurridas.

*Número:* RE-86-206 *Resuelto:* 30 de junio de 1988

194

*Luis A. Lineres Grau*, abogado de la recurrente; *Rosell Barrios Amy*, de *McConell, Valdés, Kelly, Sifre, Griggs & Ruiz-Suria*, abogado de las recurridas.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

En *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985), dejamos sin resolver si bajo la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) son compensables los daños emocionales que un despido discriminatorio causare al empleado.[1] Hoy resolvemos en la afirmativa.

## I

La Sra. Esther García Pagán presentó querella contra su patrono Shiley Caribbean en la que solicitó indemnización por los daños económicos, físicos y angustias mentales sufridas como consecuencia del discrimen por razón de sexo al que fue sometida. Fundó su causa de acción en la Ley Núm. 100, *supra*, que prohíbe el discrimen en el empleo; la Ley Núm. 3 de 13 de marzo de 1942, conocida como ley para la protección de madres obreras, 29 L.P.R.A. secs. 467–474, y la Ley Núm. 69 de 6 de julio de 1985, que prohíbe el discrimen en el empleo por razón de sexo, 29 L.P.R.A. secs. 1321–1341. Alegó la querellante que desde que contrajo matrimonio fue objeto de recriminaciones, persecuciones y humillaciones por parte de la querellada. Alegó, además, que había sido privada de ascensos y aumentos, y que incluso se le soli-

---

[1] Véase *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 508 esc. 10 (1985).

citó presentara su renuncia. Esta actitud discriminatoria en su contra se intensificó desde que la querellante quedó embarazada. Por último, García Pagán adujo que la conducta de la demandada le había ocasionado angustias mentales y trastornos físicos que la obligaron a someterse a tratamiento médico.

Por su parte, la querellada Shiley Caribbean presentó una solicitud de desestimación parcial en la que planteó que no procedía la reclamación de daños y angustias mentales bajo las disposiciones de las leyes descritas anteriormente. El Tribunal Superior, luego de celebrar vista a esos efectos, desestimó todas las reclamaciones por daños y angustias mentales y concluyó que, a la luz de los estatutos bajo los cuales surge la reclamación de discrimen de la querellada, ésta tiene derecho a recibir como compensación por daños y angustias mentales sólo una cantidad entre cien (100) y mil (1,000) dólares, a discreción del tribunal. Concluyó, además, que el remedio provisto por estas leyes es exclusivo e impide una reclamación de daños y perjuicios amparada en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141.

La querellante solicitó revisión de la sentencia parcial dictada por el Tribunal Superior. Acordamos revisar para aclarar cuáles son los daños compensables en acciones por violación a las leyes citadas.

## II

En vista de la naturaleza y la importancia de esta controversia, procede que hagamos varios pronunciamientos preliminares.

Un análisis cuidadoso del texto y del historial legislativo de estas leyes revela que su principal objetivo es la erradicación de todo tipo de discrimen en el empleo en Puerto Rico. Las mismas forman parte de un ordenamiento integral formulado por la Asamblea Legislativa y recoge los postulados de la Carta de Derechos de nuestra Constitución que prohíbe

el discrimen "por motivo de raza, color, sexo, nacimiento, origen o condición social, ni ideas políticas o religiosas". Art. II, Sec. 1 de la Carta de Derechos, Const. E.L.A., L.P.R.A., Tomo 1, ed. 1982, pág. 257. En su informe a la Convención Constituyente, la Comisión de Carta de Derechos delimitó el propósito y el alcance de esta disposición de la Constitución del E.L.A.:

> El propósito de esta sección es fijar claramente como base consustancial de todo lo que sigue el principio de la dignidad del ser humano y, como consecuencia de ésta, la igualdad esencial de todas las personas dentro de nuestro sistema constitucional. La igualdad ante la ley queda por encima de accidentes o diferencias, bien tengan su origen en naturaleza o en la cultura. Todo discrimen o privilegio contrario a esta esencial igualdad repugna al sistema jurídico puertorriqueño. En cuanto fuera menester nuestra organización legal queda robustecida por la presente disposición constitucional, a la vez que obligada a ensanchar sus disposiciones para dar plena realización a lo aquí dispuesto. 4 Diario de Sesiones de la Convención Constituyente, Sec. 1, pág. 2561 (1951).

Esta sección de la Carta de Derechos dispone, además, que las leyes "encarnarán estos principios" de esencial igualdad humana. En su extenso informe a la Convención Constituyente, la Comisión de Carta de Derechos advirtió que estos postulados "tienen un vasto alcance cuya implementación detallada requiere acción legislativa". Diario de Sesiones, *supra*, pág. 2563.

Al aprobar la Ley Núm. 100, *supra*, la Asamblea Legislativa ratificó estos postulados constitucionales y formuló unos remedios para poner en vigor esa disposición de la Carta de Derechos dentro del contexto obrero-patronal. Su propósito fue dotar a la clase obrera con los instrumentos necesarios para protegerlos del discrimen por razón de edad, raza, co-

lor, sexo, origen social o nacional, condición social e ideas políticas o religiosas.(2)

Como protección adicional para la mujer trabajadora, fueron aprobadas la Ley Núm. 3, *supra*, enmendada por la Ley Núm. 39 de 19 de junio de 1969, Arts. 1 y 2 (29 L.P.R.A. secs. 467 y 469), y la Ley Núm. 69, *supra*. La Ley Núm. 3, *supra*, está encaminada a salvaguardar los derechos de las trabajadoras embarazadas, estableciendo un período de descanso tanto antes como después del alumbramiento, y a prohibir el despido, suspensión, reducción de salario o discrimen de cualquier índole contra la obrera debido a la merma de producción por causa del estado de gestación. 29 L.P.R.A. sec. 469. Por su parte, la Ley Núm. 69, *supra*, "va encaminada a proveer mayores garantías para toda la fuerza trabajadora del país, mediante el establecimiento de una serie de salvaguardas que desalienten [las] prácticas discriminatorias [por razón de sexo], que se realizan más contra la mujer, en las fases de oportunidad de empleo, remuneración y beneficios marginales". Informe Conjunto de las Comisiones de Desarrollo Socioeconómico y Planificación, y de lo Jurídico Penal sobre el P. del S. Núm. 130, 30 de mayo de 1985, pág. 3120. Al aprobar dicha legislación, la Asamblea Legislativa resolvió y declaró "que los valores de igualdad y libertad expresados en la Constitución del Estado Libre Asociado de Puerto Rico constituyen la piedra angular de la sociedad puertorriqueña. Es nuestro deber velar por el estricto cumplimiento de la garantía constitucional que tienen todas las personas para que no se les discrimine por razón de su sexo". 29 L.P.R.A. sec. 1321.

Como medio de garantizar su cumplimiento, estas leyes establecen una acción civil, y otra de carácter criminal, con-

---

(2) Después de su aprobación, la Ley Núm. 100 de 30 de junio de 1959 (29 L.P.R.A. secs. 146–151) fue enmendada para ampliar su alcance y prohibir el discrimen por sexo, Ley Núm. 50 de 30 de mayo de 1972, y por origen social o nacional, Ley Núm. 67 de 3 de junio de 1983.

tra todo patrono que incurra en conducta discriminatoria. Véase 29 L.P.R.A. secs. 146, 469 y 1341, respectivamente. En todas, el esquema de compensación es el mismo:

(a) incurrirá en *responsabilidad civil*

(1) por una suma igual al doble del importe de los *daños* que el acto haya causado al empleado o solicitante de empleo;

(2) o por una suma no menor de cien (100) dólares ni mayor de mil (1,000) dólares, a discreción del Tribunal, si no se pudieren determinar *daños pecuniarios*;

(3) o el doble de la cantidad de los *daños* ocasionados si ésta fuere inferior a la suma de cien (100) dólares. . . . (Énfasis suplido.) 29 L.P.R.A. sec. 146(a).

Nos toca en esta ocasión interpretar y delimitar el alcance de la transcrita disposición legal, la cual luego de ser incorporada en el texto de la Ley Núm. 100, *supra*, se ha incluido reiteradamente en legislación posterior con fines análogos. 29 L.P.R.A. secs. 469 y 1341. .

█ Aunque al promulgar la Ley Núm. 100, *supra*, los legisladores no discutieron el alcance de sus remedios, el debate efectuado al enmendar en el 1960 la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13–19, es indicativo de la amplitud de los recursos disponibles a los obreros. La Ley de Derechos Civiles de Puerto Rico establece una prohibición contra el discrimen en lugares públicos, negocios, medios de transporte y viviendas.[3] En su origen, esta legisla-

---

[3] "(a) En Puerto Rico no se negará a persona alguna acceso, servicio e igual tratamiento en los sitios y negocios públicos y en los medios de transporte por cuestiones políticas, religiosas, de raza o color o por cualquiera otra razón no aplicable a todas las personas en general.

"(b) Será ilegal la publicación, circulación o distribución de toda orden, aviso o anuncio tendiente a impedir, prohibir o desalentar el patrocinio de, o la concurrencia a los sitios y negocios públicos y los medios de transporte, por cuestiones políticas, religiosas, o de raza o color.

"(c) Ninguna persona que posea el derecho de vender, arrendar o subarrendar una vivienda, podrá negarse a conceder una opción de venta, a vender, arren-

ción sólo establecía una sanción penal contra aquellas personas que incurrieran en la conducta prohibida. Sin embargo, se interpretó en *Muriel v. Suazo*, 72 D.P.R. 370 (1951), como que permitía una acción civil al amparo del Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, por los daños morales sufridos por una persona víctima de discrimen. En 1960 se enmendó la Ley de Derechos Civiles de Puerto Rico para reconocer legislativamente nuestro dictamen de *Muriel v. Suazo*, supra, a la vez que se ampliaba para, además, conceder daños punitivos. 1 L.P.R.A. sec. 13.[4] En dicha ocasión no prosperó una enmienda que hubiere extendido la Ley de Derechos Civiles de Puerto Rico, con los remedios que la misma provee, para los casos de discrimen en la concesión de empleos. Del historial legislativo surge que los legisladores entendieron que la recién aprobada Ley Núm. 100, *supra*, establecía remedios *de igual amplitud* para evitar el discrimen en el empleo e indemnizar a las personas agraviadas. Véase 13 Diario de Sesiones de la Asamblea Legislativa (Or-

---

dar o subarrendar dicha vivienda a cualquier otra persona o grupo de personas por cuestiones políticas, religiosas, o de raza o color.

"(d) Será ilegal la publicación o circulación de anuncios, avisos o cualesquiera otras formas de difusión, estableciendo limitaciones o requisitos en cuanto a afiliación política, ideas religiosas, o en cuanto a raza o color, como condición para la adquisición de viviendas, o para la concesión de préstamos para la construcción de viviendas.

"(e) Ninguna persona natural o jurídica que se dedique a conceder préstamos para la construcción de viviendas podrá negarse a prestar dicho servicio a cualquier otra persona o grupo de personas por cuestiones políticas, religiosas, o de raza o color." 1 L.P.R.A. sec. 13.

[4] La Ley Núm. 125 de 13 de julio de 1960 añadió, entre otras cosas, los siguientes dos (2) párrafos al Art. 2:

"Cualquier persona perjudicada por la infracción de las secs. 13 a 19 de este título podrá instar ante el tribunal competente la correspondiente acción civil por los daños y perjuicios que tal infracción le cause.

"De prosperar el recurso, el tribunal impondrá en adición a la indemnización que corresponda por los daños y perjuicios causados, el pago de otra idemnización adicional, por concepto de daños punitivos." 1 L.P.R.A. sec. 14.

dinaria), T. 4, pág. 1878 (1960).[5] Al tener toda esta legislación un mismo propósito, erradicar el discrimen de nuestra sociedad, sus disposiciones se deben leer en forma armoniosa —R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 73, pág. 481— y así evitar interpretaciones que conduzcan a resultados irrazonables o absurdos, o que den lugar a distinciones que carezcan de fundamento racional. Véase *Atiles, Admor. v. Comisión Industrial*, 77 D.P.R. 16, 20 (1954).

## III

Esta innovadora legislación social tiene su equivalencia en la jurisdicción federal en la Ley Federal contra el Discrimen en el Empleo, *Age Discrimination in Employment Act* (A.D.E.A.), 29 U.S.C. sec. 621 *et seq*. En *Odriozola v. S. Cosmetic Dist. Corp.*, supra, analizamos algunas normas aplicables a casos de discrimen al amparo de la ley federal (A.D.E.A.) y, aunque dicho estatuto fue promulgado después de la Ley Núm. 100, *supra*, hemos adoptado algunas de sus normas debido a la similitud de propósitos entre ambas leyes. Sin embargo, aunque nos beneficiamos de la experiencia en la jurisdicción federal, no estamos obligados a adoptar las interpretaciones judiciales de estas leyes análogas, particularmente cuando en Puerto Rico, a diferencia de Estados Unidos, nuestra legislación responde a una prohibición constitucional expresa contra todo tipo de discrimen.

En la controversia particular ante este Tribunal, las leyes federales análogas no proveen remedios específicos para recobrar por daños emocionales por despidos discriminatorios. Véase *Odriozola v. S. Cosmetic Dist. Corp.*, supra, pág. 508

---

(5) En dicha ocasión se indicó, en referencia a la Ley Núm. 100, *supra*, que recientemente se había aprobado una "ley completa" que reglamentaba todo lo referente al discrimen en el empleo.

esc. 10. Tampoco existe ese remedio al amparo del Título VII del Estatuto de Deréchos Civiles de 1964 (42 U.S.C. sec. 2000e *et seq.*). Véanse: B.L. Schlei y P. Grossman, *Employment Discrimination Law*, Washington, Ed. The Bureau of National Affaires, 1976, págs. 1452–1453; Ch. A. Sullivan, M.J. Zimmer y R.F. Richards, *Federal Statutory Law of Employment Discrimination*, Nueva York, Ed. The Bobbs–Merill Company, 1980; Nota, *Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964*, 84 Harv. L. Rev. 1109 (1971); *Albemarle Paper Co. v. Moody*, 422 U.S. 405 (1975); *Rogers v. Exxon Research & Engineering Co.*, 550 F.2d 834 (3er Cir. 1977); *Vázquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1er Cir. 1978); *Harrington v. Vandalia-Butler Bd. of Ed.*, 585 F.2d 192 (6to Cir. 1978). Esta norma ha sido severamente criticada en Estados Unidos, porque no provee adecuada compensación a las víctimas de discrimen, e ignora los daños sicológicos y emocionales que éstas sufren. Véanse: M.J. Goldberg, *Implying Punitive Damages in Employment Discrimination Cases*, 9 Harv. C.R.–C.L. L. Rev. 325, 369 (1974); Nota, *Tort Remedies for Employment Discrimination Under Title VII*, 54 Va. L. Rev. 491 (1968); Nota, *Damage Remedies Under the Age Discrimination in Employment Act*, 43 Brooklyn L. Rev. 47 (1976); R.F. Richards, *Compensatory and Punitive Damages in Employment Discrimination Cases*, 27 Ark. L. Rev. 603 (1973); Nota, *Developments in the Law: Employment Discrimination and Title VII of the Civil Rights Act of 1964*, supra, págs. 1261–1269.

Sin embargo, algunos tribunales de distrito han permitido al demandante recobrar por los daños, incluso angustias mentales causadas por la conducta discriminatoria, por entender que se sirven y se adelantan mejor los fines del estatuto si se le compensan al reclamante todos los daños sufridos. *Humphrey v. Southwestern Portland Cement*

*Company,* 369 F. Supp. 832 (D. Tex. 1973); revocado por otros fundamentos, *Rogers v. McCall,* 488 F. Supp. 689, 691 (D. Colum. 1980); *Wise v. Olan Mills Inc. of Texas,* 485 F. Supp. 542 (D. Col. 1980); *Coates v. National Cash Register Co.,* 433 F. Supp. 655 (D. Va. 1977); *Hassan v. Delta Orthopedic Medical Group, Inc.,* 476 F. Supp. 1063 (D. Cal. 1979); *Kennedy v. Mountain States Tel. and Tel. Co.,* 449 F. Supp. 1008 (D. Col. 1978).

No obstante, en relación con la concesión de daños mentales bajo el estatuto local contra el discrimen en el empleo, la jurisprudencia federal interpretativa del Título VII del Estatuto de Derechos Civiles de 1964, *supra,* y del A.D.E.A. es poco persuasiva. El A.D.E.A. incorpora como remedio para las víctimas de discrimen por razón de edad los remedios provistos por el *Fair Labor Standards Act,* 29 U.S.C. sec. 216(b),[6] entre los cuales no está incluida la concesión de daños por angustias mentales. Por su parte, se ha interpretado que el Título VII del Estatuto de Derechos Civiles de 1964, *supra,* provee sólo remedios en equidad, 42 U.S.C. sec. 2000e-5(g), y no remedios legales. Schlei y Grossman, *op. cit.*; Sullivan, Zimmer y Richards, *op. cit.*; *Albemarle Paper Co. v. Moody,* supra. Esta distinción entre remedios en equidad *vis-à-vis* remedios legales no tiene aplicación en nuestro derecho.[7]

---

[6] "Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages." 29 U.S.C. sec. 216(b).

[7] El Tribunal de Estados Unidos para el Distrito de Puerto Rico, en el caso *Wildman v. Lerner Stores Corp.,* 582 F. Supp. 80 (D. P.R. 1984), resolvió que no son compensables los daños y angustias mentales a la luz de las disposiciones de la Ley Núm. 100, *supra,* apoyándose en los mismos fundamentos por los cuales se limitan los remedios disponibles bajo el *Age Discrimination in Employment Act* (A.D.E.A.), 29 U.S.C. secs. 621–634. El tribunal federal concluyó que la Ley Núm. 100, *supra,* creó una causa de acción donde no existía una compensación

Por otro lado, bajo la legislación estatal de derechos civiles se ha reconocido ampliamente que son resarcibles los daños y angustias mentales sufridas. Anotación, *Recovery of Damages as Remedy for Wrongful Discrimination under State or Local Civil Rights Provisions*, 85 A.L.R.3d 351, 355 (1978); Anotación, *Recovery of Damages for Emotional Distress Resulting from Discrimination because of Sex or Marital Status*, 61 A.L.R.3d 944, 945 (1975).(8) La tendencia en los estados es la de interpretar las disposiciones de derechos civiles de una forma amplia que asegure su efectividad como mecanismo para combatir el discrimen. Anotación, *Recovery of Damages as Remedy for Wrongful Discrimination under State or Local Civil Rights Provisions*, supra, pág. 358.

En la esfera local, nuestra jurisprudencia no distingue entre daños físicos, materiales o morales para efectos de resarcimiento. *Correa v. Autoridad Fuentes Fluviales*, 83 D.P.R. 144, 153 (1961); *Vázquez v. Pueblo*, 76 D.P.R. 594 (1954); *Hernández v. Fournier*, 80 D.P.R. 93, 97 (1957). "Daño" es todo aquel menoscabo material o moral que sufre una persona, ya en sus bienes vitales naturales, ya en su pro-

---

por daños morales y que el legislador había querido limitar los remedios así concedidos.

Desafortunadamente, al momento de emitir esta decisión, el Tribunal de Distrito no contaba con una interpretación de este Tribunal sobre esta controversia de derecho estatal.

(8) Véanse: *Gray v. Serruto Builders, Inc.*, 265 A.2d 404 (N.J. 1970); *Zahorian v. Russell Fitt Real Estate Agency*, 301 A.2d 754 (N.J. 1973); *Dir., Div. on Civil Rights v. Slumber, Inc.*, 398 A.2d 1345 (N.J. 1979); *Williams v. Joyce*, 479 P.2d 513 (Or. App. 1971); *School District No. 1, Multnomah County v. Nilsen*, 534 P.2d 1135 (Or. 1975); *Massachusetts Com'n Against Discrim. v. Franzaroli*, 256 N.E.2d 311 (Mass. 1970); *Bournewood Hosp. v. Mass. Comm. Against Discrim.*, 358 N.E.2d 235 (Mass. 1976); *Anderson v. Pantages Theater Co.*, 194 P. 813 (Wash. 1921); *Humburd v. Crawford*, 105 N.W. 330 (Iowa 1905); *Loomis Electronics Protection, Inc. v. Schaefer*, 549 P.2d 1341 (Alaska 1976); *Board of Educ. v. State Div. of Human Rights*, 486 N.Y.S.2d 469 (A.D. 3 Dept. 1985); *New York State Dept. of Corr. Serv. v. McCall*, 486 N.Y.S.2d 443 (A.D. 3 Dept. 1985); *Chance v. Franks Beauty Salon*, 316 N.Y.S.2d 236 (A.D. 3 Dept. 1970).

piedad o en su patrimonio, causado en contravención a una norma jurídica y por el cual ha de responder otra. J. Santos Briz, *La Responsabilidad Civil*, 2da ed., Madrid, Ed. Montecorvo, 1977, pág. 126; M. Albaladejo, *Comentarios al Código Civil y compilaciones forales*, Madrid, Ed. Edersa, 1984, T. XXIV, pág. 156; H.M. Brau, *Los daños y perjuicios extracontractuales en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1986, Vol. 1, Cap. VIII, pág. 427. La responsabilidad civil es precisamente el deber de resarcir al damnificado al otorgarle un valor económico al daño sufrido. J. Bustamante Alsina, *Teoría general de la responsabilidad civil*, 4ta ed., Argentina, Ed. Abeledo-Perrot, 1983, pág. 135. "[E]l 'resarcimiento o indemnización pecuniaria consiste en atribuir al perjudicado la cantidad de dinero suficiente para compensar su interés perjudicado. *Es como una subrogación real en la que el dinero ocupará el lugar de los daños y perjuicios sufridos.* Es una atribución pecuniaria que crea una situación patrimonial que equivale a la destruida por el daño causado'." (Énfasis en el original.) *Rodríguez Cancel v. A.E.E.*, 116 D.P.R. 443, 455–456 (1985).

■ Si bien en principio los daños intangibles, como lo son el sufrimiento, las angustias mentales y los daños emocionales, se consideran daños no patrimoniales, ya que su valoración pecuniaria no se funda en una equivalencia matemática, no por eso dejan de ser compensables en dinero. Santos Briz, *op. cit.*, págs. 140–169; Brau, *op. cit.*, pág. 427; G. Ortiz Ricol, *Valoración jurídica del daño moral*, III (Núm. 11) Rev. Der. Esp. y Amer. 141 (1958). Después de todo, los daños morales pueden ser de tal magnitud que su importancia exceda la de cualquier daño material sufrido.

■ Desde hace tiempo este Tribunal ha reconocido la existencia en Puerto Rico de una acción civil de daños y perjuicios por violación a derechos civiles. *Muriel v. Suazo*, su-

pra. En aquella ocasión, adoptamos la norma de que "un estatuto protector de derechos civiles, no obstante contener una disposición de índole penal por su violación, no impide el ejercicio de una acción civil de daños y perjuicios, ya que el deber impuesto a las personas a quienes se aplica lo es para la protección y beneficio de otras personas, y la violación de ese deber es fuente de responsabilidad por cualquier daño causado como consecuencia de ella". *Muriel v. Suazo*, supra, pág. 376. Reconocimos, además, *que el daño causado por una humillación sufrida como consecuencia de discrimen de este tipo es de más importancia que muchos daños físicos. Muriel v. Suazo*, supra, pág. 375. Precisamente, por la importancia del derecho protegido, todas estas leyes proveen amplios remedios civiles y penales para combatir el discrimen. En el debate legislativo sobre la Ley Núm. 100, *supra*, el Senador Negrón López expuso con gran claridad la intención de sus autores:

> *Creo que este Proyecto es sencillo* y trata un problema d[i]fícil, como bien dice el compañero, pero de una manera sencilla. *Establece una acción civil* y *una acción penal contra discrímenes. Esa es la forma clásica en que toda legislación, la antigua legislación contra discrímenes raciales en Puerto Rico,* que está vigente, me parece, desde el año 1941 ó '42, y una antiquísima legislación sobre derechos civiles, en general, que está vigente desde el año 1902, *la manera en que tratan este difícil problema del discr[i]men, es estableciendo una acción penal y una acción civil,* porque ese es el alcance educativo y *la ley llega a servir sus fines de esa manera* educativa, señalándole a las personas orden, un comportamiento y una norma social correcta de esta manera, sin intervenir, mayormente, sin intervenir en el régimen de sus relaciones en la organización de sus negocios ni en otros aspectos de su funcionamiento como se ha sugerido aquí, en el curso de esta discusión. (Énfasis suplido.) 12 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 2, pág. 688 (1959).

Al expresar que la Ley Núm. 100, *supra*, establecía una acción civil en la "forma clásica", al igual que la legisla-

ción contra discrímenes raciales, se estaba reconociendo que el remedio concedido por este estatuto iba a ser de igual amplitud que el permitido en *Muriel v. Suazo*, supra, al interpretar la Ley de Derechos Civiles de 1943. No albergamos duda que tiene que ser igual.

En *Olmo v. Young & Rubicam of P.R., Inc.*, 110 D.P.R. 740, 745 (1981), reconocimos que el precedente establecido en *Muriel v. Suazo*, supra, no estaba limitado al discrimen racial y que la regla allí establecida era aplicable, en ausencia de legislación en contrario, a la acción civil por discrimen que consagra a la Ley Núm. 100, *supra*. Además, reafirmamos la existencia en Puerto Rico de una causa de acción en daños y perjuicios fundada en discrimen en el empleo, particularmente reconocida mediante la Ley Núm. 100, *supra*.

 Por último, resulta obligado reiterar y enfatizar las normas de hermenéutica que nos guían en nuestra función de interpretar las leyes. El fin primordial de la interpretación estatutaria es hacer que prevalezca el propósito legislativo y evitar las interpretaciones que puedan conducir a resultados irrazonables. *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986); *Passalacqua v. Mun. de San Juan*, 116 D.P.R. 618 (1985); *Lozada v. Antonio Roig, Sucrs.*, 73 D.P.R. 266, 270 (1952); *In re Marín Báez*, 81 D.P.R. 274, 278 (1959); *Borinquen Furniture v. Tribl. de Distrito*, 78 D.P.R. 901, 905 (1956); Bernier y Cuevas Segarra, *op. cit.*, págs. 245–247. No debe dársele a parte de una ley un significado que derrote los fines del propio estatuto. *Latoni v. Corte Municipal*, 67 D.P.R. 140 (1947).

> Como el propósito de la interpretación es lograr que se cumplan los fines intentados por el legislador, *"las leyes deben interpretarse y aplicarse en comunión con el propósito social que las inspira. No deben desvincularse del problema humano cuya solución persiguen, ni descarnarse de las reali-*

*dades de vida que la sociedad misma ha proyectado sobre
ellas, pues se tornaría ilusorio y se perdería en el vacío el
deseo de justicia que las genera". Figueroa v. Díaz,* 75
D[.]P[.]R[.] 163, 171 (1953) (Opinión de los jueces Negrón Fernández y Belaval). (Énfasis en el original.) Bernier y Cuevas
Segarra, *op. cit.,* Cap. 39, pág. 297.

En el caso particular de legislación cuyo fin primordial es remediar los efectos adversos de una actuación
inconstitucional, debemos favorecer una interpretación que
resulte en una mejor protección de los derechos humanos.
Debemos siempre tener presente que todas las leyes de justicia social "deben ser liberalmente interpretadas, a fin de
poder lograr los elevados fines perseguidos por el legislador". *Torres v. González,* 63 D.P.R. 964, 972 (1944). Véase
Bernier y Cuevas Segarra, *op. cit.,* Cap. 72, pág. 461.

Con estas consideraciones, procede el examen del texto
de la disposición que impone responsabilidad civil por violación a las leyes obreras que prohíben el discrimen en el empleo. 29 L.P.R.A. secs. 146, 469 y 1341.[9]

IV

La acción civil provista por la Ley Núm. 100, *supra,* dispone que el que viole sus disposiciones incurrirá en *"responsabilidad civil* por una suma igual al doble del importe de los
*daños* que el acto haya causado . . .". (Énfasis suplido.) 29
L.P.R.A. sec. 147(a)(1). Del texto de la ley no surge clasificación o limitación alguna en cuanto a qué tipo de daño se compensará. Al aprobar la Ley Núm. 100, *supra,* los legisladores
eran conscientes de que nuestro Derecho permitía recobrar
compensación por los daños y angustias mentales sufridas.

---

[9] Como el texto de la disposición que establece responsabilidad civil es el mismo para la Ley Núm. 100, *supra,* la Ley Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. secs. 467–474), y la Ley Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. secs. 1321–1341), y siendo análogas en sus propósitos, es lógico que la interpretación que hoy hagamos sea aplicable a las tres (3) leyes.

Véanse las expresiones del Senador Negrón López anterior-
mente citadas. Diario de Sesiones, *supra*. Tomando en
cuenta que el propósito de la Asamblea Legislativa fue apro-
bar una medida que no sólo prohibiera el discrimen, sino que
además impusiera responsabilidad civil por los daños cau-
sados, en ausencia de expresión legislativa contradictoria no
podemos concluir que la ley excluye indemnización de daños
y angustias morales. Muy por el contrario, si consideramos
que el patrón legislativo ha estado dirigido a ampliar y a ex-
pandir la protección de los derechos civiles y a conseguir el
fiel y real cumplimiento con los mandatos de nuestra Consti-
tución, es inevitable la conclusión de que la Asamblea Legis-
lativa aprobó un esquema remedial con todos los instrumen-
tos necesarios para reparar a las víctimas de los daños cau-
sados por el discrimen en el empleo. Sólo así se le da conte-
nido real al principio establecido en nuestra Carta de Dere-
chos de que "[l]a dignidad del ser humano es inviolable".
Const. E.L.A., *supra*, pág. 257.

En materia de indemnización por discrimen en el campo
laboral, los estatutos en controversia consagran la fórmula a
seguir. Cualquier indagación doctrinal en el derecho compa-
rado sólo puede servirnos como módulo esclarecedor. Hay
ciertas ideas, no obstante, que poseen valor universal. "En
esta inteligencia . . . el contrato de trabajo posee un sentido
esencialmente ético, en virtud del cual la personalidad del
trabajador se convierte en un elemento fundamental, 'y de
ahí entonces que todo aquello que afecte el plano moral en el
cual se sitúa la relación laboral, produce consecuencias sus-
ceptibles de condenar al autor. . . '." E.E. Martorell, *Indem-
nización del daño moral por despido*, Buenos Aires, Ed.
Hammurabi, 1985, pág. 145.

La opinión disidente parte de la premisa de que la fór-
mula de compensación del subinciso (2), 29 L.P.R.A. sec.
147(a), "cualifica la cubierta" del subinciso (1), 29 L.P.R.A.
sec. 147(a), aunque acepta *"que bajo el concepto genérico de*

*'daños' puede entenderse que la responsabilidad civil del patrono comprende todo tipo de lesión. Abona a es[ta] interpretación el subinciso (1), 29 L.P.R.A. sec. 147(a), que expresa que la responsabilidad es por el doble de los 'daños' sin que éstos se limiten o se especifiquen. Igualmente, el subinciso (3), 29 L.P.R.A. sec. 147(a), no cualifica el vocablo 'daños'"*. (Énfasis suplido.) Opinión disidente, pág. 222.

El propósito del legislador fue establecer una fórmula para reparar los daños causados por el discrimen en el empleo. Aunque la Constitución es la fuente de remedios, el estatuto provee la medida en que los daños han de ser resarcidos.

Nótese que, de resolver lo contrario, estaríamos convirtiendo por fíat judicial una legislación de protección al obrero en una de privilegio para el patrono, quien para todos los efectos prácticos obtendría una inmunidad parcial de facto ante reclamaciones por discrimen en el empleo. Cuando el legislador ha querido crear inmunidades y exclusividad de remedios, así lo ha hecho expresamente como en el caso de la Ley de Compensaciones por Accidentes del Trabajo, 11 L.P.R.A. sec. 21. Esquemas de esta índole, derogatorios de las normas generales sobre responsabilidad civil que imperan en nuestro país, no pueden inferirse livianamente. Es la Asamblea Legislativa la que debe limitar los remedios disponibles.

La intención legislativa fue aprobar un estatuto que ampliara los instrumentos de protección al trabajador. Por eso el legislador no promulgó un ordenamiento que expresamente limitara los remedios existentes. Sí lo hizo, por el contrario, cuando en la Ley Núm. 80 de 30 de mayo de 1976 (29 L.P.R.A. sec. 185a(b)) proveyó una indemnización por despido injustificado limitada a la mesada o compensación progresiva equivalente a una semana por cada año de servicio.

De esta manera, el legislador reconoció la diferencia conceptual entre la reparación de una violación a un derecho fundamental y la indemnización de un derecho económico de origen estatutario.

■ Resolvemos, por lo tanto, que cuando la Ley Núm. 100, *supra*, dispone que la responsabilidad civil será por una suma igual al doble del importe de los daños que el acto haya causado, esto se refiere *a todos los daños sufridos por la víctima, incluso daños y angustias mentales, en aquellos casos, claro está, en que su existencia quede debidamente establecida por los promoventes del pleito.* Como componentes distintos del daño, uno no absorbe al otro.

■ Schlei propone como fundamento para excluir la compensación de daños y angustias mentales de las disposiciones de la Ley Núm. 100, *supra,* que este tipo de compensación se caracteriza por ser imprecisa e incierta. También plantea que conceder compensación por daños mentales crea incentivos para demandas injustificadas contra los patronos. Aunque comprendemos su preocupación, esta tesis ignora los propósitos socioeconómicos y constitucionales de la ley y limita el alcance de su protección contra el discrimen en el empleo. Por otro lado, los tribunales tienen los instrumentos necesarios para desalentar pleitos frívolos, incluso sanciones contra los abogados.

Ya anteriormente este Tribunal ha reconocido lo difícil y angustiosa que es la gestión judicial de estimación y valoración de daños por la falta de un sistema mecánico que permita llegar a un resultado exacto. *Rodríguez Cancel v. A.E.E.,* 116 D.P.R. 443, 451 (1985); *Urrutia v. A.A.A.,* 103 D.P.R. 643 (1975). La existencia de un cierto elemento de especulación no impide que el tribunal, a base de los hechos particulares, la prueba presentada y los criterios ya establecidos, pueda determinar una cuantía adecuada y razonable

para compensarle al reclamante los daños sufridos. *Publio Díaz v. E.L.A.*, 106 D.P.R. 854, 871 (1978); *Urrutia v. A.A.A.*, supra; *Rodríguez Cancel v. A.E.E.*, supra; *Canales Velázquez v. Rosario Quiles*, 107 D.P.R. 757 (1978); Santos Briz, *op. cit.*, págs. 140–169; Brau, *op. cit.*, pág. 427; Ortiz Ricol, *supra.*

También argumenta la querellada que el inciso (a)(2), 29 L.P.R.A. sec. 146, de la disposición sobre responsabilidad civil, limita la compensación sobre daños y angustias mentales a un máximo de mil (1,000) dólares. El mismo establece que, en caso de que "no se pudieren determinar daños pecuniarios", el Tribunal, discrecionalmente, concederá una compensación por una cantidad no menor de cien (100) ni mayor de mil (1,000) dólares. La querellada interpreta este inciso como que establece que, en aquellos casos en que no hay pérdida de ingreso y el daño sufrido es sólo de tipo moral o mental, éstos se compensarán de acuerdo con los límites ya mencionados. Alega que la referencia en la ley a cuando no se pudieren determinar "daños pecuniarios" es equivalente a daños y angustias mentales.

No nos convence su argumento. Hay ciertos derechos de tan alta jerarquía dentro del sistema de gobierno en que vivimos que su violación es no sólo una injuria contra la víctima cuyo derecho ha sido infringido, sino que. además es una afrenta contra el interés del Estado. El Estado no solamente tiene el deber de abstenerse de infringir esos derechos, sino también tiene que intervenir para proteger a los ciudadanos. Se exige una actuación positiva del Estado en beneficio del ciudadano. J. Trías Monge, *Historia Constitucional de Puerto Rico*, San Juan, Ed. U.P.R., 1982, Vol. III, pág. 200.

Los postulados de igualdad de nuestra Constitución, y que recoge en sus disposiciones la Ley Núm. 100, *supra*, son este tipo de derecho. Un acto de discrimen por edad, raza, color, sexo, origen social o nacional, ideas polí-

ticas o religiosas, es un acto contra la sociedad al igual que contra el individuo. Mediante la Ley Núm. 100, *supra*, la Asamblea Legislativa actuó afirmativamente para prohibir y penalizar el discrimen en el empleo. La mera violación del derecho es de por sí un daño compensable.

Para asegurar que estos derechos fundamentales fueran escrupulosamente respetados, la legislatura impuso responsabilidad civil por la mera violación del interés protegido, aun en ausencia de prueba de daños por parte de la persona afectada. El método para poner en vigor esta legislación ha sido utilizado en Estados Unidos para proteger los derechos civiles. *Carey v. Piphus*, 435 U.S. 247 (1978); *Tatum v. Houser*, 642 F.2d 253 (8vo Cir. 1981); *Dillon v. Pulaski Cty. Special Sch. Dist.*, 468 F. Supp. 54 (D. Ark. 1978).

Este es, precisamente, el esquema de responsabilidad civil de la Ley Núm. 100, *supra*. Cuando "no se pudieren determinar daños pecuniarios" o, dicho de otra manera, cuando no sea posible calcular y compensar en dinero la pérdida o daño (material y/o moral) que la privación del derecho haya causado al reclamante, bien porque éste no presentó prueba de su existencia o porque la presentada no puso al tribunal en condiciones de cuantificar su magnitud, éste podrá, a su discreción, conceder de cien (100) a mil (1,000) dólares de compensación.

Esto no impide que, de establecerse solamente la existencia de daños morales se le compensen a la víctima de conformidad con el primer inciso, esto es, el "doble del importe de los daños que el acto haya causado . . . ". 29 L.P.R.A. sec. 146(a)(1). Después de todo, el daño moral, como antes expresáramos, también es susceptible de apreciación pecuniaria. Martorell, *op. cit.*, págs. 57–66.

A la luz de los propósitos que persiguió el legislador al aprobar las leyes contra discrimen en el empleo que hoy interpretamos, y con el ánimo de darle completa efectividad a sus disposiciones, resolvemos que tanto bajo la Ley Núm. 100, *supra*, que prohíbe el discrimen en el empleo, como bajo la ley de protección a las madres obreras, Ley Núm. 3, *supra*, y la Ley Núm. 69, *supra*, procede el resarcimiento de daños y angustias mentales.

Se devolverá el caso al tribunal de instancia para procedimientos ulteriores conformes con lo aquí dispuesto.

El Juez Asociado Señor Negrón García emitió opinión disidente, a la cual se unen los Jueces Asociados Señores Rebollo López y Ortiz.

—O—

Opinión disidente del Juez Asociado Señor Negrón García, a la cual se unen los Jueces Asociados Señores Rebollo López y Ortiz.

I

"[E]s más fácil ser generoso que ser justo, pero nuestro sentido del deber nos impide tomar el camino más fácil si éste está reñido con la justicia." *Silva v. Comisión Industrial*, 91 D.P.R. 891, 904 (1965). En estricta juridicidad y en conciencia, no podemos suscribir la opinión del Tribunal. *No se ha planteado debidamente un reclamo de inconstitucionalidad.* Aunque la opinión del Tribunal soslaya ese aspecto, es obvio que esa es la premisa mayor inarticulada en que se asienta la interpretación expansiva en materia de indemnización de daños mentales laboral. Sólo así se entiende la fragilidad de la dicotomía entre remedios constitucionales, estatutarios, patrimoniales y personales. De haber sido esa la controversia y curso decisorio, la suscribiríamos.

Ausente la dimensión constitucional, es obvio que si la visión legislativa de paternalismo laboral que inspiró los remedios estatutarios en las Leyes Núm. 100 de 30 de junio de 1959, según enmendada, 29 L.P.R.A. secs. 146–151 —discrimen en el empleo— Núm. 3 de 13 de marzo de 1942 (29 L.P.R.A. secs. 467–474) —madres obreras embarazadas— y Núm. 69 de 6 de julio de 1985 (29 L.P.R.A. secs. 1321–1341) —discrimen en el empleo por razón de sexo— es incompleta o debe o no subsistir, no es asunto sometido apropiadamente ante nuestra consideración. Si la protección y reivindicación de los derechos civiles de los trabajadores y el erradicar todo tipo de discrimen en el empleo es suficiente o requiere un nuevo enfoque remedial, es cuestión de la Asamblea Legislativa. "[C]uando mencionemos a la doctrina que niega la procedencia de la indemnización por daño moral dentro del derecho laboral, no debe entenderse que niega que el mismo pueda llegar a acaecer dentro de esta rama del derecho, o que en el caso de generarse no deba ser reparado, sino que lo que en definitiva niega, es que el mismo merezca una reparación autónoma o extraforfataria, porque considera que éste halla correcta reparación por medio de la indemnización tarifada." E.E. Martorell, *Indemnización del daño moral por despido*, Buenos Aires, Ed. Hammurabi, 1985, pág. 122.

Trazadas las coordenadas adjudicativas correctas, un análisis sereno refleja que las leyes mencionadas no proveen la compensación por daños en concepto de angustias y sufrimientos mentales.[1] Reproduzcamos el texto compensatorio común en todas que recogen lo que los estudiosos denominan "indemnización tarifada". Martorell, *op. cit.*, págs. 87, 97–98. Su filosofía responde a la naturaleza jurídica de indemnización por despido:

---

[1] En *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485, 508 esc. 10 (1985), dejamos sin resolver la cuestión.

Si el despido se rigiera por el derecho común, el *quantum* indemnizatorio estaría determinado por la prueba que se pudiere producir. De acuerdo con las normas procesales vigentes, y por lo establecido por el derecho de fondo, el trabajador debería acreditar los daños sufridos, para lo que se tendría en especial cuenta ciertos factores como, su edad, su profesión, su salud, la antigüedad y la categoría profesional que detentaba en la empresa, como también el tiempo que tardó en conseguir una nueva ocupación, y si ésta fue de igual o inferior nivel jerárquico, elementos todos que obrarían como indicios para determinar las consecuencias que le produjo al trabajador su despido.

. . . . . . . .

La ley también cierra, en general, toda polémica posible acerca del *quantum* indemnizatorio, y para evitar cualquier discusión sobre la evaluación del daño determina la cuantía del resarcimiento, presumiendo siempre la existencia de perjuicios originados en el incumplimiento del contrato. Martorell, *op. cit.*, págs. 93–94.

Establecen que:

(a) incurrirá en responsabilidad civil

(1) por una suma igual al doble del importe de los *daños* que el acto haya causado al empleado o solicitante de empleo;

(2) o por una suma no menor de cien (100) dólares ni mayor de mil (1,000) dólares, a discreción del tribunal, *si no se pudieren determinar daños pecuniarios*;

(3) o el doble de la cantidad de los daños ocasionados si ésta fuere inferior a la suma de cien (100) dólares, y

(b) incurrirá, además, en un delito menos grave y, convicto que fuere, será castigado con multa no menor de cien (100) dólares ni mayor de quinientos (500) dólares, o cárcel por un término no menor de treinta (30) días ni mayor de noventa (90) días, o ambas penas, a discreción del tribunal.

El tribunal en la sentencia que dicte en acciones civiles interpuestas bajo las precedentes disposiciones podrá ordenar al patrono que reponga en su empleo al trabajador y que cese y desista del acto de que se trate. (Énfasis suplido.) 29 L.P.R.A. sec. 146.

## II

La interpretación y alcance legislativo de la Ley Núm. 100, *supra*, la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13–19, y otras que le atribuye la opinión mayoritaria, no tiene fundamento alguno en el trasfondo legislativo. Menos para desarrollar correctamente una analogía conceptual en materia de daños y perjuicios. Desprovista de ella, cae todo el andamiaje jurídico en que se apuntala. Curiosamente, sin mencionarlo, se invoca toda nuestra jurisprudencia básica enraizada en el Art. 1802 del Código Civil, 31 L.P.R.A. sec. 5141, que si bien no distingue entre daños físicos, materiales o morales —*Correa v. Autoridad Fuentes Fluviales*, 83 D.P.R. 144, 153, (1961)— tampoco limita la causa de acción a solamente el perjudicado o víctima, sino que la hace extendible a sus parientes y familiares cercanos.

Primeramente, el diálogo parlamentario habido bajo la Ley Núm. 100, *supra*, es insuficiente para precisar la *mens* legislativa. Específicamente, el Senador Colón Castaño inquirió si la fórmula establecida incluía "daños morales o daños de haber dejado de trabajar". Aun así, la interrogante no fue contestada adecuadamente. 12 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 2, pág. 682 (1959).

Además, en el contexto en que se hicieron las expresiones del Senador Negrón López, como parte del trámite de aprobación de la Ley Núm. 100, *supra* —citadas en la pág. 207 de la opinión mayoritaria— no justifican la conclusión arribada. Lo que dicho senador indicó es producto de las dudas del Senador Colón Castaño sobre el carácter de la acción civil y de la acción penal establecidas en el proyecto de ley, y del reclamo de varios legisladores, de que el mismo debía remitirse a las Comisiones de lo Jurídico Civil, de lo Jurídico Penal y de Estilo. Diario de Sesiones, *supra*, págs. 682–685.

Con el fin de que no se diera curso a ese trámite, el Senador Negrón López expuso:

Las objeciones que yo oí; tenían que ver con el hecho de si estaba adecuadamente separado o no lo relativo a la responsabilidad civil y a la responsabilidad criminal. Eso es, obviamente, y yo diría que exclusivamente una cuestión que tiene que ver con la redacción de la medida. Diario de Sesiones, *supra*, pág. 685.

Más adelante señaló:

Yo quiero decir, señor Presidente, que cuando una Comisión informante considera que ha estudiado una medida adecuadamente —en este caso, la Comisión del Trabajo rindió un informe al Senado, y recomendó su aprobación— y no hay objeciones mayores, que tengan que ver con la redacción del Proyecto, como en este caso, en que solamente se ha señalado que está mezclada la responsabilidad penal y la responsabilidad civil, no considero que el Proyecto debe volverse a una Comisión, mucho menos a otra Comisión con lo cual se está señalando que no ha habido el adecuado y debido estudio, cosa que se ha propuesto, no por el compañero, pero se ha propuesto, en este caso, por otros miembros del Senado.

Normalmente esa no debe ser la práctica, excepto que la Comisión informante reclame que tal cosa se haga. Yo me he opuesto siempre a las enmiendas improvisadas en el Senado, porque muchas veces no responden a la mayor sabiduría científica y jurídica.

Creo que este Proyecto es sencillo y trata un problema difícil, como bien dice el compañero, pero de una manera sencilla. Establece una acción civil y una acción penal contra discrímenes. Esa es la forma clásica en que toda legislación, la antigua legislación contra discrímenes raciales en Puerto Rico, que está vigente, me parece, desde el año 1941 ó '42, y una antiquísima legislación sobre derechos civiles, en general, que está vigente desde el año 1902, la manera en que tratan este difícil problema del discr[i]men, es estableciendo una acción penal y una acción civil, porque ese es el alcance educativo y la ley llega a servir sus fines de esa manera educativa, señalándole a las personas orden, un comportamiento y una norma

social correcta de esta manera, sin intervenir, mayormente, sin intervenir en el régimen de sus relaciones en la organización de sus negocios ni en otros aspectos de su funcionamiento como se ha sugerido aquí, en el curso de esta discusión. Diario de sesiones, *supra*, pág. 688.

En estas circunstancias, las expresiones del Senador Negrón López obviamente se limitan a aclarar la redacción en el proyecto con el fin de evitar que fuera referido a las comisiones antes mencionadas. Dicho interlocutor indicó que las sanciones consideradas en el proyecto eran acciones de índole civil y penal, las cuales resultan ser los remedios clásicos en leyes dirigidos a prohibir el discrimen en el empleo. Salvo una imaginación sin límites, difícilmente tales expresiones significan —ni son susceptibles de tomarse aisladamente— para concluir que se estableció una "acción civil clásica". Diferimos de esa forzada conclusión mayoritaria.

De igual forma, la interpretación sobre la enmienda a la Sec. 1 de la Ley de Derechos Civiles de 1960, Ley Núm. 125 de 13 de julio de 1960 (1 L.P.R.A. sec. 13),[3] tampoco tiene el alcance atribuido en la opinión mayoritaria. Veamos.

Ni en el Informe de la Comisión de lo Jurídico citado en la nota al calce 5 de la opinión mayoritaria ni las expresiones

---

[3] "Artículo 1. —Se adicionan los incisos (c), (d) y (e) a la sección 1 de la Ley Núm. 131, aprobada el 13 de mayo de 1943, conocida como 'Ley de Derechos Civiles de Puerto Rico', para que lean como sigue:

"'(c) Ninguna persona que posea el derecho de vender, arrendar o subarrendar una vivienda, podrá negarse a conceder una opción de venta, a vender, arrendar o subarrendar dicha vivienda a cualquier otra persona o grupo de personas por cuestiones políticas, religiosas, o de raza o color.'

"'(d) Será ilegal la publicación o circulación de anuncios, avisos o cualesquiera otras formas de difusión, estableciendo limitaciones o requisitos en cuanto a afiliación política, ideas religiosas, o en cuanto a raza o color, como condición para la adquisición de viviendas, o para la concesión de préstamos para la construcción de viviendas.'

"'(e) Ninguna persona natural o jurídica que se dedique a conceder préstamos para la construcción de viviendas podrá negarse a prestar dicho servicio a cualquier otra persona o grupo de personas por cuestiones políticas, religiosas, o de raza o color.'" 1960 Leyes de Puerto Rico 363–364.

de los legisladores en el debate, fueron a los efectos de que en la Ley Núm. 100, *supra,* se establecían "remedios *de igual amplitud".* Lo que allí se consignó fue que "la *cuestión* de discrimen por razón de raza o color en la concesión de empleos *está cubierta con entera amplitud* por la Ley [Núm.] 100 de 30 de junio de 1959". (Énfasis suplido.) 13 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 4, pág. 1878 (1960).

Al plantearse que se aprobara la referida enmienda, se suscitó el diálogo siguiente:

> *Sr. García Meléndez*: Antes que se aprueben las enmiendas yo deseo saber cuál es la razón por la cual se recomienda la eliminación de las líneas 7 y 8 en la página 2, que tienen que ver fundamentalmente con la filosofía y el espíritu del proyecto.
>
> *Sr. Aponte*: Señor Presidente, esa materia está reglamentada por una ley *completa* sobre la cual pasamos hace unos días y, si mal no recuerdo, el compañero me interrogó intensamente. Una ley completa que tiene que ver con el discrimen en relación con empleos, mientras que esta parte de la ley brega *solamente con el discrimen en la venta de arrendamiento y opciones relacionadas con viviendas y en el uso de locales públicos.* (Énfasis suplido.) Diario de Sesiones, *supra,* pág. 1878.

Contrario a como se sugiere, lo único que puede concluirse del citado debate e informe es que se consideró que no era apropiada la inclusión de este asunto en la Ley de Derechos Civiles de Puerto Rico, 1 L.P.R.A. secs. 13–19, porque la cuestión del discrimen en el empleo estaba completamente regulada por una ley específica sobre esta materia, y la sección de la Ley de Derechos Civiles de Puerto Rico a ser enmendada —y donde se había incluido— sólo se refería al tema del "discrimen en la venta de arrendamiento y opciones relacionadas con viviendas y en el uso de locales públicos". Diario de Sesiones, *supra,* pág. 1878.

Por último, nos preguntamos que si la intención era incluir bajo la Ley Núm. 100, *supra*, los "daños" por angustias y sufrimientos mentales, por qué en dicha legislación se adoptó una fórmula tan particular y no se incorporó el mismo lenguaje que en la enmienda a la Ley de Derechos Civiles de Puerto Rico. Adviértase que ambos estatutos fueron promulgados luego de nuestra decisión en *Muriel v. Suazo*, 72 D.P.R. 370 (1951).

El análisis expansivo de la mayoría del Tribunal parte inexplicablemente de la premisa equivocada de que la norma escrita expresa menos de lo que el legislador quiso decir, *minus dixit quam voluit*. R.E. Bernier y J.A. Cuevas Segarra, *Aprobación e interpretación de las leyes en Puerto Rico*, 2da ed., San Juan, Pubs. J.T.S., 1987, Vol. I, Cap. 35, pág. 263. La dificultad de ese razonamiento, según hemos visto, es que precisamente carecemos de información *ex legibus*.

Aceptamos que bajo el concepto genérico de "daños" puede entenderse que la responsabilidad civil del patrono comprende todo tipo de lesión. Abona a esa interpretación el subinciso (1), 29 L.P.R.A. sec. 147(a), que expresa que la responsabilidad es por el doble de los "daños" sin que éstos se limiten o se especifiquen. Igualmente, el subinciso (3), 29 L.P.R.A. sec. 147(a), no cualifica el vocablo "daños".

Por otro lado, cabe interpretar que sólo se responde por "daños pecuniarios", pues la fórmula de compensación establecida en el subinciso (2), 29 L.P.R.A. sec. 147(a), cualifica la cubierta al fijar una penalidad "si no pudieren determinar daños pecuniarios".

Nos inclinamos por la segunda posición. Varias razones nos mueven a llegar a esta conclusión.

En primer lugar, es regla dorada de hermenéutica que al interpretar un estatuto se toman en conjunto todos sus apartados y no individualmente. Bernier y Cuevas Segarra, *op. cit.*, pág. 315. Bajo esta visión de conjunto, la fórmula de

compensación del subinciso (2), *supra*, "si no se pudieren determinar daños pecuniarios", proyecta el verdadero significado de la voz "daños" del subinciso (1), *supra*, a saber, de carácter pecuniarios. Únicamente así tiene algún sentido integral la expresión legislativa.

## III

Robustece esta interpretación los antecedentes de la Ley Núm. 100, *supra*. Según reconocimos en *Odriozola v. S. Cosmetic Dist. Corp.*, 116 D.P.R. 485 (1985), es claro que esta legislación tiene iguales propósitos que la Ley Federal contra el Discrimen en el Empleo, *Age Discrimination in Employment Act* (A.D.E.A.), 29 U.S.C. sec. 621 *et seq.* Bajo esta última los tribunales, con visión casi unánime, han resuelto que no son compensables los daños emocionales. *Márquez Vélez v. David M. Puerto Rico Graphic Sup.*, 660 F. Supp. 569 (D. P.R. 1985); *Wildman v. Lerner Stores Corp.*, 582 F. Supp. 80 (D. P.R. 1984); *Hill v. Spiegel, Inc.*, 708 F.2d 233, 236 (6to Cir. 1983); *Pfeiffer v. Essex Wire Corp.*, 682 F.2d 684 (7mo Cir.), *cert.* denegado, 459 U.S. 1039 (1982); *Fiedler v. Indianhead Truck Line, Inc.*, 670 F.2d 806 (8vo Cir. 1982); *Naton v. Bank of California*, 649 F.2d 691 (9no Cir. 1981); *Vázquez v. Eastern Air Lines, Inc.*, 579 F.2d 107 (1er Cir. 1978); *Rogers v. Exxon Research and Engineering Co.*, 550 F.2d 834 (3er Cir. 1977), *cert.* denegado, 434 U.S. 1022 (1978); *Slatin v. Stanford Research Institute*, 590 F.2d 1292 (4to Cir. 1979); *Dean v. American Sec. Ins. Co.*, 559 F.2d 1036, 1038 (5to Cir. 1977), *cert.* denegado, 434 U.S. 1066 (1978).

## IV

Existe otro estatuto que por su analogía y tratamiento apoya nuestra interpretación contemporánea. Nos referimos al historial de la Sec. 4 de la Ley Núm. 3 de 13 de marzo de

1942, según enmendada por la Ley Núm. 39 de 19 de junio de 1969 (29 L.P.R.A. sec. 469). Sus términos son similares al Art. 1 de la Ley Núm. 100, *supra*, 29 L.P.R.A. sec. 146. Su historial nos permite, sin dudas, concluir que la responsabilidad civil del patrono no incluye daños emocionales, sino solamente aquellos económicos dejados de percibir por la actuación discriminatoria. Veamos.

La Sec. 4 de la Ley Núm. 3, *supra*, originalmente disponía:

> El patrono no podrá, sin causa justa, despedir a la mujer embarazada. No se entenderá que es justa causa el menor rendimiento para el trabajo, en razón del embarazo. 29 L.P.R.A. ant. sec. 469.

Esta disposición fue objeto de interpretación por este Foro en *Schneider v. Tropical Gas Company, Inc.*, 95 D.P.R. 626 (1967). Se trataba de una mujer embarazada despedida de su empleo cinco y medio (5½) meses antes del alumbramiento porque desmereció su rendimiento y trabajo. Se le pagó un (1) mes de salario y las vacaciones acumuladas. Ella presentó acción contra el patrono y el tribunal de instancia resolvió que éste tenía que pagarle el salario por cuatro y medio (4½) meses y, desde ese momento, por cuatro (4) semanas después del parto, a mitad de sueldo.

Al acudir en alzada el patrono, este Tribunal revocó y decidió que ella sólo era acreedora a recibir una compensación equivalente a un (1) mes de sueldo —como derecho a mesada— pues la Ley Núm. 3, *supra*, no establecía compensación por despidos injustificados, sino solamente un período de descanso.

La opinión disidente —con la que estuvieron conformes cuatro (4) jueces— expresó que la Sec. 4 de la Ley Núm. 3, *supra*, "establece un pacto implícito, de naturaleza pública —*ex re pública facere*— en todo contrato de trabajo de una mujer embarazada que debe ser cumplido por el obligado, y

*cuyo incumplimiento da derecho a la perjudicada al corres-*
*pondiente resarcimiento de daños y perjuicios, siendo en*
*tal caso la medida razonable del daño la suma de dinero que*
*hubiera podido percibir la empleada embarazada de haber*
*continuado en su trabajo durante el embarazo".* (Énfasis
suplido.) *Schneider v. Tropical Gas Company, Inc.*, supra,
pág. 636.

Luego de *Schneider v. Tropical Gas Company, Inc.*, su-
pra, la Asamblea Legislativa enmendó la Sec. 4 mediante la
Ley Núm. 39, *supra*, y añadió el inciso (a):

(a) Todo patrono que despida, suspenda, reduzca el salario,
o discrimine en cualquier forma contra una trabajadora por
razón de la merma en su producción mientras ésta se encuen-
tre en estado de embarazo o rehúse restituirla en su trabajo
luego del alumbramiento, incurrirá en *responsabilidad civil*
por una suma igual al doble del importe de los *daños* que cual-
quiera de los actos antes mencionados haya causado a la tra-
bajadora, o por una suma no menor de cien dólares ($100.00)
ni mayor de mil dólares ($1,000.00) a discreción del tribunal si
no se pudieran determinar *daños pecuniarios* o el doble de
éstos si montaran a una suma menor de cien dólares ($100.00).

La empleada además tendrá derecho a que se le reponga en
su trabajo so pena de incurrir el patrono en daños adicionales
idénticos o iguales a los establecidos en esta sección. (Énfasis
suplido.) 29 L.P.R.A. sec. 469.

El propósito de esta enmienda fue autorizar a las obreras
embarazadas despedidas sin justa causa a reclamar la com-
pensación que la mayoría del Tribunal negó en *Schneider v.
Tropical Gas Company, Inc.*, supra. Véase el Informe de la
Comisión de Trabajo y Fomento Cooperativo del Senado so-
bre el P. del S. Núm. 14 de 1ro de abril de 1969, que se con-
virtió en la Ley Núm. 39, *supra*.[4] En este sentido, dicha

---

[4] "Actualmente, la ley proh[í]be el despido injustificado de una obrera em-
barazada y establece que el menor rendimiento de ésta, en razón del embarazo,

enmienda constituye "un estatuto interpretativo especial
...". *Ledesma, Admor. v. Tribl. de Distrito*, 71 D.P.R. 87, 91
(1950). Como tal, su historial sirve de guía al caso que nos
ocupa.

La intención de que la compensación se limita a los sala-
rios dejados de percibir queda evidenciada en la siguiente
discusión entre los Senadores Menéndez Monroig y Marcano
sobre el P. del S. Núm. 14:

> *Sr. Menéndez Monroig*: Al Presidente de la Comisión del
> Trabajo o al proponente del proyecto. Me refiero a la Sección
> 4, su último párrafo dice, "La empleada además tendrá dere-
> cho a que se le reponga en su trabajo so pena de incurrir en
> daños adicionales." Quisiera que me digan cuáles son los
> daños adicionales por que esa parte del proyecto...
>
> *Sr. Marcano: Se trata de los mismos daños contenidos an-
> teriormente*, o sea, la obrera tiene derecho a que la repongan
> en su trabajo si no la reponen en su trabajo *entonces el pa-
> trono está sujeto a los daños ya establecidos antes en la ley.
> Como el compañero ve, ella tiene derecho a recobrar daños
> antes, o sea, si no se le repone, entonces ella tendría derecho a
> una acción adicional para recobrar iguales daños por el
> tiempo en que no se ha repuesto en su trabajo.*
>
> *Sr. Menéndez Monroig*: ¿No cree el compañero Marcano
> que debería aclararse eso más para que diga... porque eso de
> daños adicionales puede ser cualquier cosa. ¿Entiende el com-
> pañero? Daños adicionales puede ser $1 o puede ser $1 millón,
> porque no está especificado. Nos parece a nosotros que debe-

---

no es justa causa. Según fuera interpretada esa disposición por el Tribunal Su-
premo de Puerto Rico en el caso de *Schneider* vs. *Tropical Gas Co.*, resuelto el 20
de diciembre de 1967, la ley no le da derecho a la mujer embarazada a reclamar
daños contra el patrono que la despide en razón de su menor rendimiento. Esto
quiere decir que el único remedio que tiene actualmente la obrera es una acción
por despido injustificado, la cual ciertamente no es remedio adecuado y sufi-
ciente. Por la acción por despido el patrono sólo tiene que pagar un mes de sueldo
que es lo 'mismo' que es lo mismo [sic] que tiene que pagar por el descanso de
ocho semanas a medio sueldo y tendría entonces el patrono la ventaja económica
que le produciría otra empleada que no esté en estado de embarazo." 23 Diario de
Sesiones de la Asamblea Legislativa (Ordinaria), T. 3, pág. 1402 (1969).

ría aclararse que *son los daños adicionales que serían idénticos a los anteriores en alguna forma.*

*Sr. Marcano*: Bueno, yo no tengo objeción a que *se aclare en esa forma,* pero como ve el compañero, en la misma sección dice que la trabajadora, el que el patrono que se niegue a emplearla incurrirá en responsabilidad civil por una suma igual al doble del importe de los daños que cualquiera de dichos actos haya causado a la trabajadora y entonces lo establece ahí. (Énfasis suplido.) 23 Diario de Sesiones de la Asamblea Legislativa (Ordinaria), T. 3, pág. 1402 (1969).

En resumen, la enmienda a la Ley Núm. 3, *supra,* antes aludida —establecer una compensación por actos discriminatorios por razón de embarazo— adoptó el mismo esquema que prevalecía en el Art. 1 de la Ley Núm. 100, *supra,* esto es, "con fines análogos". Con absoluta claridad, se entendió que los daños compensables se limitaban a la pérdida de ingreso.

Los Arts. 17 y 18 del Código Civil, 31 L.P.R.A. secs. 17 y 18, establecen los principios de hermenéutica relativos a las leyes *in pari materia.* Para determinar el significado de palabras dudosas de un estatuto es lícito confrontarlas con otras relacionadas e interpretarlas en armonía con leyes que versan sobre el mismo objetivo o asunto. "Cuando el propósito de dos leyes es idéntico, los tribunales deben impartir la misma interpretación a sus disposiciones correlativas." *E.U.A. v. Registrador,* 116 D.P.R. 269, 274 (1985).

Lo expuesto refleja que el diseño estatutario vigente no provee la indemnización de angustias y sufrimientos mentales en acciones de esta índole. El esquema es de "indemnización tarifada". Su modificación es ámbito que compete únicamente a la Asamblea Legislativa. Por ello disentimos.

## V

Una nota final precautoria. Al interpretar judicialmente lo contrario, el Tribunal ha iniciado una reformulación de toda la arquitectura prevaleciente en esta materia. Las

puertas abiertas son anchas. Al disentir de esta interpretación lo hemos hecho adhiriéndonos al magro historial legislativo y leyes similares. Establecida mayoritariamente la nueva tónica, ese *stares decisis* libera a todos los integrantes del Tribunal para adoptar una nueva postura sobre cualesquiera límites que en el mañana, judicialmente, se pretenda imponer a los trabajadores y a sus familiares por daños y angustias mentales sufridas por despidos ilegales y discriminatorios. Ese curso de acción está disponible no sólo bajo las leyes mencionadas en la industria privada —en particular la Ley Núm. 80 de 30 de mayo de 1976, despido injustificado y mesada, 29 L.P.R.A. sec. 185a— sino en despido de empleados públicos más allá de los remedios clásicos de sueldo y beneficios marginales que ordena la Sec. 7.17 de la Ley de Personal del Servicio Público de Puerto Rico, 3 L.P.R.A. sec. 1397.

El fundamento de privilegios patronales es difícil de sostener y justificar en el ordenamiento laboral. Con la opinión del Tribunal, ha emergido la coexistencia de régimen de "indemnización tarifado" con el sistema de responsabilidad civil. Después de todo, para el obrero despedido, discriminado y para sus seres queridos —que comparten los efectos dañinos negativos, vicisitudes y sufrimientos por tales actos— poco importa si la violación se origina en un derecho mencionado a nivel constitucional o estatutario. En la proporción correspondiente, todos sufren un daño moral en el espíritu, y físico en carne y hueso. Ciertamente su intensidad no disminuye por distinciones judiciales livianas fundadas en el texto de la Constitución o de una ley. *Cf. Rivera v. Security Nat. Life Ins. Co.*, 106 D.P.R. 517 (1977).