Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL XI

| | | |
|---|---|---|
| CARLOS RULLÁN CAPARRÓS, LUISA CARMONA COLLADO Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelantes<br><br>v.<br><br>MARISOL RAMOS RODRÍGUEZ, FULANO DE TAL Y LA SOCIEDAD LEGAL DE GANANCIALES COMPUESTA POR AMBOS<br><br>Apelados | TA2026AP00143 | APELACIÓN Procedente del Tribunal de Primera Instancia, Sala de UTUADO<br><br>Caso Núm.: UT2019CV00545<br><br>Sobre: Acción Civil, Sentencia Declaratoria, Acción Reivindicatoria y de Deslinde, Interdicto Posesorio, Daños y Perjuicios |

Panel integrado por su presidenta la Jueza Rivera Marchand, la Jueza Mateu Meléndez, la Jueza Boria Vizcarrondo y el Juez Robles Adorno.

Mateu Meléndez, Jueza Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 21 de abril de 2026.

Comparece ante nos el señor Carlos Rullán Caparrós, la señora Luisa Carmona Collado y la Sociedad Legal de Gananciales compuesta por ambos (parte apelante), mediante el presente recurso de *Apelación*, y nos solicitan que revoquemos la *Sentencia*, emitida el 18 de diciembre de 2025, notificada en autos el día 19, por el Tribunal de Primera Instancia, Sala Superior de Utuado (TPI).[1]

Por virtud del aludido dictamen, el TPI declaró *No Ha Lugar* la causa de acción por daños y perjuicios que fue acumulada en la demanda, tras determinar que la parte apelante no presentó prueba sobre los daños alegados, no estableció su nexo causal, y tampoco logró establecer los

---

[1] Sistema Unificado de Manejo y Administración de Casos (SUMAC) TPI, Entrada Núm. 173.

requisitos excepcionales de un pleito injustificado que diera lugar a una acción por daños. A su vez, el foro de instancia concluyó que en nuestra jurisdicción no existe una acción en daños y perjuicios por el mero hecho de estar sujeto a los procedimientos de un litigio civil.

Por los fundamentos que exponemos a continuación, **revocamos** la determinación apelada.

## I.

El caso de autos tiene su génesis el 26 de octubre de 2019, cuando la parte apelante presentó una *Demanda* sobre sentencia declaratoria, acción reivindicatoria, deslinde, interdicto posesorio y daños y perjuicios.[2] En esencia, se alegó que la señora Marisol Ramos Rodríguez, su esposo Fulano de Tal y la Sociedad Legal de Gananciales compuesta por ambos (parte apelada),[3] perturbaron su derecho real y han ocupado sin justo título e ilegalmente una franja o porción de terreno del predio de un inmueble sito en el Municipio de Utuado que les pertenece, impidiendo y obstaculizando su uso y disfrute, causando que estos no puedan edificar ni construir en la misma.

Específicamente, adujeron que la parte apelada de manera maliciosa e ilegal le impedía llevar a cabo el ejercicio de marcar, identificar, mensurar, y hacer el deslinde de las colindancias, por lo cual, se solicitó al tribunal emitir una orden a esos efectos. Además, peticionaron al tribunal emitir sentencia reivindicatoria para devolverles el terreno usurpado y una orden de interdicto posesorio ya que su posesión se había visto perturbada, afectada y obstaculizada.

Por último, como consecuencia de las acciones ilegales y omisiones legales, y por la culpa y/o negligencia exclusiva y directa de la parte

---

[2] SUMAC TPI, Entrada Núm. 1.

[3] Aunque la acción fue presentada igualmente contra el esposo desconocido de la apelada y contra una presunta Sociedad Legal de Gananciales, de los autos no ha surgido información respecto a la existencia de cualquiera de estos y la recurrida en su contestación negó que existiera una sociedad ganancial.

apelada, reclamaron haber sufrido daños y perjuicios, los que estimaron en una cantidad no menor de $25,000.00. Respecto a los daños, argumentaron que mientras no fuesen reparados mediante el resarcimiento monetario y la reivindicación oportuna, los daños serían permanentes. También, solicitaron la imposición de costas, gastos y honorarios de abogado, por una cantidad no menor de $10,000.00.

El 2 de septiembre de 2020, la señora Marisol Ramos Rodríguez presentó *Contestación a Demanda y Reconvención*,[4] posteriormente enmendada.[5] Allí se planteó que, la posesión que se alega en la demanda es una viciada por la fuerza y la violencia, ya que la parte apelante nunca ha estado en posesión de la franja que se reclama, tampoco durante el año previo. En su reconvención, alegó que los demandantes destruyeron plantas, derribaron y quemaron árboles, alterando los puntos de colindancia para invadir su propiedad. Argumentó, que en el caso de autos operaba la usucapión extraordinaria, por lo que, los apelantes habían perdido la titularidad de los predios que reclamaban en virtud de la reconvención instada. De modo que, solicitó al Tribunal que desestimara la demanda en su contra y, a su vez, ordenase a los apelantes responder por los daños y perjuicios, estimados en la suma de $55,000.00.

Tras varios incidentes procesales que no son necesarios pormenorizar, mediante *Resolución* del 26 de mayo de 2022, el TPI eliminó las alegaciones de la parte apelada como sanción por los múltiples incumplimientos con las órdenes del tribunal.[6] Ante este hecho, la parte apelante solicitó al tribunal que dictara sentencia parcial en rebeldía contra

---

[4] *Íd.*, Entrada Núm. 25.

[5] La parte apelante solicitó exposición más definida de las alegaciones contenidas en la Contestación a Demanda y Reconvención, así ordenado por el Tribunal. *Véase*, SUMAC TPI, Entradas Núm. 28 y 31. Por lo cual, la parte apelada presentó Contestación a Demanda y Reconvención Enmendada. *Véase, Íd.*, Entradas Núm. 33, 39 y 47.

[6] SUMAC TPI, Entrada Núm. 104.

la parte apelada, ante lo cual esta última presentó su respectiva réplica en oposición.[7]

Consecuentemente, el foro de instancia emitió *Resolución* en la que declaró *No Ha Lugar* la solicitud de la parte apelante y dispuso que la sanción de eliminar las alegaciones no conlleva de manera automática la inexistencia de controversias de hechos que justifiquen que se dicte sentencia en rebeldía, sin celebrar una vista evidenciaria.[8] Inconforme, la parte apelante presentó *Reconsideración*, la cual fue declarada *No Ha Lugar* por el foro primario.[9]

En vista en ello, la parte apelante recurrió ante este Foro Intermedio mediante el recurso de *certiorari* KLCE202301021 y nos solicitó la revisión de dicha resolución, ocasión en la que se denegó su expedición.[10] Todavía inconforme, se recurrió al Tribunal Supremo, quien expidió el recurso de *certiorari* CC-2023-0714 y dictó sentencia a los efectos de revocar la determinación de un panel hermano.[11] En síntesis, el Tribunal Supremo determinó que conforme a la norma esbozada en *Mitsubishi Motor Sales of Caribbean, Inc. y. Lunor, Inc.*, 212 DPR 807 (2023), el castigo de la supresión total de las alegaciones supone directamente la imposición de la sanción de sentencia en rebeldía. De modo que, el Alto Foro le anotó la rebeldía a la parte apelada, ordenando la devolución del caso al TPI para la continuación de los procedimientos conforme a lo ordenado.

De conformidad, el TPI le concedió término a la parte apelada para mostrar causa por la cual no se debía dictar sentencia parcial en rebeldía.[12] Vencido el término sin oposición, el Tribunal procedió a adjudicar la controversia del caso de autos. Así las cosas, el 13 de mayo de 2025,

---

[7] *Íd.*, Entradas Núm. 135 y 139.

[8] *Íd.*, Entrada Núm. 144.

[9] *Íd.*, Entradas Núm. 145 y 146.

[10] *Íd.*, Entradas Núm. 147-149.

[11] *Íd.*, Entrada Núm. 155.

[12] Esto, atendiendo la *Moción para que se tome conocimiento judicial de la Sentencia del TSPR en el caso CC 2023-0714 y se dicte Sentencia Parcial en rebeldía* presentada por la parte apelante. *Véase*, SUMAC TPI, Entrada Núm. 158.

notificada el día 21, el foro de instancia emitió *Sentencia Parcial en Rebeldía*, en la que estableció las siguientes determinaciones de hechos:

1. Los co-demandantes son dueños en común pro indiviso, a razón de un cincuenta por ciento (50 %) cada uno aportando cada uno la mitad del precio de compraventa, del bien inmueble que a continuación se describe (en adelante el Bien Inmueble):

   RÚSTICA: Parcela de terreno localizada en el Barrio paso Palmas del término municipal de Utuado, Puerto rico, con una cabida superficial de cero punto seis mil ochocientos cuarenta y siete (0.6847) cuerdas, o sea, dos mil seiscientos noventa y uno punto mil ochocientos catorce (2,691.1814) metros cuadrados, equivalente a veintiséis (26) áreas, noventa y una (910 centiáreas, dieciocho (18) mil áreas y catorce (14) diez milésima de áreas. En lindes por el NORTE, en una distancia de cincuenta punto seiscientos setenta y uno (50.671) metros lineales, con el remanente de la finca de la cual se segrega: por el SUR, en una distancia de ochenta y cinco punto novecientos veinte y un (85.921) metros lineales, con la orilla del Río Jauca; por el ESTE en una distancia de cuarenta y dos punto ochocientos doce (42,812) metros lineales, con el remanente de la finca principal; y por el OESTE, en una distancia de sesenta y dos punto setecientos cincuenta y nueve (72.759) metro lineales, con una faja de terreno que separa la carretera ramal Puerto rico seiscientos seis (606). Enclava una casa de madera y zinc. Inscrita al folio cuarenta y seis (46) de tomo cuatrocientos diecisiete (417) de Utuado, finca número veintitrés mil setecientos treinta y tres (23,736) del Registro de la Propiedad de Puerto Rico Sección de Utuado. Número de catastro de la finca original 241-000-0004-70-901.

2. La Parte Demandante adquirió el Bien Inmueble mediante la Escritura de Compraventa Número seis (6) otorgada el 14 de abril de 2018 ante el notario Ricardo Robles Caraballo.

3. La Parte Demandante contrató los servicios de un perito ingeniero con el fin de efectuar una demarcación, identificación, rectificación y corrección de los puntos de las colindancias de su terreno. Dicho ejercicio reflejó que el predio de la Parte Demandada, el cual colinda con el Bien Inmueble de la Parte Demandante, está ocupando una franja de terreno de este último, **ello de manera ilegal y sin justo título, perturbando así el derecho real que tienen los co-demandantes.**

4. La franja de terreno que la Parte Demandada se encuentra ocupando **de manera ilegal y sin justo título** se encuentra identificada en el plano de inscripción de julio de 1985, preparado este por el agrimensor Efraín Meléndez Otero, licencia 7669.

5. El agrimensor Carlos L. Alfonzo Chardón confeccionó un plano ilustrativo y un informe, este con fecha de 16 de marzo de 2022, basado el mismo en el plano de inscripción preparado por el agrimensor Efraín Meléndez Otero.

6. La franja que ocupa la Parte Demandada [de] **manera ilegal y sin justo título discurre** desde los puntos 22 B al 22 C, tal y como ilustrados en el plano ilustrativo preparado por el agrimensor Carlos Alfonzo Chardón, y ocupa un área de dos (2) metros por cuarenta (40) metros para un total de 80 metros cuadrados.

7. El Tribunal celebró una vista de inspección ocular el 29 de noviembre de 2023. En esta, el Tribunal cotejó los puntos de la colindancia entre los predios de la Parte Demandante y Parte

Demandada, observando que los puntos marcados como el 10 c 22 b y 22 c que surgen del Plano Ilustrativo marcado como número uno (1) del Informe Pericial delimitan y marcan las colindancias entre el terreno de la Parte Demandante y la Parte Demandada. Asimismo, el constató que los puntos marcados como 37, 38 y 39, los cuales surgen del Plano Ilustrativo delimitan y marcan las colindancias entre el terreno de la Parte Demandante y la Parte Demandada.

8. **La Parte Demandada ha estado ocupando ilegalmente una franja de terreno perteneciente a la Parte Demandante, impidiendo y obstaculizando así su uso y disfrute, y causando que estos no puedan edificar ni construir en su propiedad**.

9. La colindancia correcta entre el predio de la Parte Demandante y el predio de la Parte Demandada es aquel demarcado por el plano de inscripción preparado por el agrimensor Efraín Meléndez Otero e ilustrado en el plano preparado por el agrimensor Carlos Alfonzo Chardón. [13]

Énfasis suplido.

Así hecho, el foro de instancia concluyó que en la demanda se hicieron alegaciones que aportan hechos demostrativos que justifican la concesión de un remedio. Coligió que, una lectura y revisión de las alegaciones de la demanda permitía concluir que procedía, como cuestión de derecho, dictar sentencia parcial en rebeldía. Indicó que, el efecto práctico de una anotación de rebeldía es "que se dan por admitidos todos los hechos bien alegados en la demanda o la alegación que se haya formulado en contra del rebelde y se autoriza al tribunal para que dicte sentencia, si esta procede como cuestión de derecho". *Mitsubishi Motor Sales of Caribbean, Inc. y. Lunor, Inc.*, *supra*.

En consecuencia, el Tribunal determinó que la parte apelada, en efecto, ha ocupado de manera contraria a derecho una franja de terreno perteneciente a parte apelante. Por lo cual, declaró *Ha Lugar* a la causa de acción de reivindicación. Ahora, con relación a las alegaciones sobre los daños y perjuicios, el TPI señaló una vista evidenciaria en rebeldía, ello a los únicos fines de que se desfilara prueba sobre el valor de los daños reclamados.

---

[13] SUMAC TPI, Entrada Núm. 161.

Tras varios asuntos procesales, la vista de daños se celebró el día 28 de octubre de 2025, en la que se presentó como prueba el testimonio de la señora Luisa Carmona Collado (Carmona Collado).[14] Luego de sometida la causa de acción por daños y perjuicios para la adjudicación correspondiente, el 18 de diciembre de 2025, notificada el día 19, el foro primario emitió *Sentencia Final*.[15] En lo pertinente, el TPI formuló las siguientes determinaciones de hechos:

1. La Parte Demandante ha vivido en una residencia alquilada desde el 2018. Por ello paga un canon de arrendamiento de $600.00 mensuales.

2. La Parte Demandante mantiene una cuenta de servicio de agua y de electricidad en el predio.

3. Luisa Carmona Collado vendió un automóvil para sufragar los gastos relacionados al litigio del caso.

4. La Parte Demandada, en reiteradas ocasiones, le manifestó a Luisa Carmona Collado que parte del terreno que esta ocupaba le pertenecía a la primera, y le solicitaba que le diese los planos del predio.

5. La Parte Demandada le gritaba a Luisa Carmona Collado desde la carretera.

6. La Parte Demandada le expresó a terceros que parte del terreno que ocupaba la Parte Demandante le pertenecía.

7. La Parte Demandada inició un procedimiento judicial solicitando una orden de protección contra Luisa Carmona Collado, alegando que esta última poseía un arma, y que temía por su seguridad. La petición de orden de protección no prosperó.

8. Luisa Carmona Collado ha padecido de depresión, ansiedad y dificultad para dormir como consecuencia del litigio del caso de epígrafe. Para ello, ha tomado varios medicamentos, incluyendo Zoloft, Klonazepam, Buspar y Trazodone. Comenzó un tratamiento médico aproximadamente dos meses luego de haberse iniciado los procedimientos del caso de epígrafe, y continúa en tratamiento médico al presente.

9. Luisa Carmona Collado recibió tratamiento con un siquiatra, para lo cual pagaba $90.00 por cada visita. Desde el 2019 hasta el presente, visita al siquiatra cada dos meses, para un total de seis visitas al año.

10. La Parte Demandante ha incurrido en gastos de mantenimiento asociados al predio. El gasto mensual era de $200.00 mensuales desde el año 2018. La última vez que Luisa Carmona Collado le brindó mantenimiento al predio fue hace cinco o seis meses.

---

[14] *Íd.*, Entrada Núm. 166.
[15] *Íd.*, Entrada Núm. 173.

11. Luisa Carmona Collado trabajó para el Departamento de la Familia durante 28 años, y dejó de trabajar en dicha agencia en el año 2022. La razón para cesar sus labores en el Departamento de la Familia fueron las condiciones emocionales que desarrolló debido a las incidencias del caso de epígrafe. A la fecha de su renuncia al Departamento de la Familia, Luisa Carmona Collado tenía un ingreso bruto de $1,294.00. Su ingreso neto quincenal era de $439.00, esto es $878.00 mensuales.[16]

12. Luisa Carmona Collado no ha construido la residencia en el predio en espera del resultado del caso de epígrafe.

Ante la consideración del Tribunal, estuvo el adjudicar varias partidas por daños en concepto de: compensación por pago de arrendamiento, cuentas de agua y electricidad, la venta de un automóvil, gastos de mantenimiento del predio y daños emocionales. Ahora bien, el Tribunal determinó que no procedía la compensación por ninguna de las partidas antes mencionadas. En ese sentido, el TPI determinó que el hecho de que la apelante haya prevalecido en su causa de acción sobre la colindancia no significaba que tal incertidumbre no existiera. Asimismo, el foro primario concluyó que la señora Carmona Collado no ofreció prueba para establecer ninguna de las partidas reclamadas, ni tampoco para establecer el nexo causal entre las acciones de la parte demandada y el daño sufrido.

Por último, indicó que la señora Carmona Collado no logró establecer que la creencia de la parte demandada sobre las colindancias fuese patentemente incorrecta, o que a sabiendas o negligentemente, se formara la opinión de que la apelante estuviese ocupando terreno que no le correspondía. De modo que, tampoco procedía una acción en daños y perjuicios como consecuencia de un pleito injustificado. El TPI sostuvo que en nuestra jurisdicción no existe una acción en daños y perjuicios por la mera presentación de un pleito civil.  En cambio, la sanción judicial por el

[16] El Tribunal consignó que, la parte demandante no incluyó una causa de acción por lucro cesante, hecho que fue reiterado por su representación legal en el curso de la vista celebrada el 28 de octubre de 2025.

uso indebido de los procedimientos legales se traduce en la condena de costas y honorarios de abogado.

En desacuerdo, el 5 de enero de 2026, la parte apelante presentó *Reconsideración*.[17] Insistió en que se presentó prueba suficiente para establecer la existencia de daños derivados de las acciones culposas y/o negligentes de la demandada que ilegalmente usurpó su terreno y propiedad, lo cual debía acarrear la consecuencia lógica de la concesión del remedio legal del resarcimiento de daños. De igual forma, añadió que las determinaciones de hecho de la sentencia parcial en rebeldía y de las de la sentencia final así lo justificaban, validaban y obligaban. Mediante *Resolución* del 13 de enero de 2026, el TPI declaró *No Ha Lugar* la reconsideración del dictamen.[18]

Inconforme con este resultado, la parte apelante compareció ante nos el 10 de febrero de 2026, mediante el presente recurso de *Apelación*[19] y le imputó al TPI haber errado al "denegar la causa de acción de daños y perjuicios de la demanda en contra de la ley del caso y de los hechos adjudicados en Sentencia Parcial.". Atendido el recurso de apelación, el 12 de febrero del año en curso dictamos *Resolución* en la que le ordenamos a la parte apelada a comparecer dentro del plazo reglamentario para así hacerlo. Posteriormente, el 13 de marzo de 2026, solicitamos al TPI que nos remitiera el enlace con la regrabación de la vista sobre daños celebrada en el caso.[20] En atención a ello, ese mismo día nos fue remitida la regrabación de la vista de daños celebrada el 28 de octubre de 2025.

Así pues, transcurrido el término concedido a la parte apelada sin que esta haya comparecido y con el beneficio de la regrabación de la vista

---

[17] SUMAC TPI, Entrada Núm. 180.
[18] *Íd.*, Entrada Núm. 181.
[19] SUMAC TA, Entrada Núm. 1.
[20] *Íd.*, Entrada Núm. 3.

de daños celebrada en el caso, procedemos a disponer del presente asunto, no sin antes exponer el marco jurídico aplicable.

**II.**

*-A-*

Entre las acciones protectoras del dominio figuran la acción reivindicatoria y aquella de deslinde. *Ramírez Quiñones v. Soto Padilla*, 168 DPR 142 (2006). La primera de estas, o sea la acción reivindicatoria, trata de la acción mediante la cual el propietario de una cosa la reclama de quien la tenga o la posea. *Íd.* El promovente de esta acción, deberá identificar adecuadamente el objeto, probar que es suyo y demostrar que está indebidamente en posesión del demandado. Véase, Artículo 280 del Código Civil de 1930, 31 LPRA Sec. 1111;[21] *Ramírez Quiñones v. Soto Padilla*, *supra*, citando a *Pérez Cruz v. Fernández*, 101 DPR 365 (1973); *Arce v. Díaz*, 77 DPR 624, 628–629 (1954).

Por su parte, la acción de deslinde tiene el propósito de determinar los linderos confundidos de dos heredades contiguas. *Ramírez Quiñones v. Soto Padilla*, *supra*. Esta acción está disponible a "todos los propietarios cuyas propiedades limítrofes tienen confundidos sus linderos por causas naturales, accidentes fortuitos o actos voluntarios de tercero, debiendo concurrir todos a un juicio…". *Íd.*, citando a *Arce v. Díaz*, *supra*, 627-628 (1954) y al Artículo 319 del Código Civil de 1930, 31 LPRA Sec. 1211.

Una sentencia reivindicatoria declara el derecho dominical del demandante y ordena que el demandado le entregue la posesión del objeto.

---

[21] El 28 de noviembre de 2020, entró en vigor el nuevo *Código Civil de Puerto Rico de 2020* (Ley Núm. 55-2020), 31 LPRA secs. 5311, *et seq.* ("Código Civil de 2020"). Es oportuno destacar que los hechos del caso de epígrafe ocurrieron previo a la fecha de vigencia de la citada ley, cuando estaba vigente el Código Civil de 1930. El código civil vigente establece en las disposiciones transitorias que, "La responsabilidad civil extracontractual, tanto en su extensión como su naturaleza, se determina **por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad**. Si unos actos u omisiones ocurrieron antes de la vigencia de este Código y otros ocurrieron después, la responsabilidad se rige por la legislación anterior". 31 LPRA sec.11720. (Énfasis suplido). Siendo ello así, para efectos del caso de epígrafe, citaremos las disposiciones aplicables del código anterior; el Código Civil de 1930.

La sentencia de deslinde, en cambio, tiene el único efecto de precisar las colindancias de determinados inmuebles. Dicha sentencia "no da ni quita derechos". *Ramírez Quiñones v. Soto Padilla*, *supra,* citando a *Zalduondo v. Méndez*, 74 DPR 637, 644 (1953) y a *Zayas v. Autoridad de Tierras*, 73 DPR 897, 901 (1952).

El deslinde se hará conforme a los títulos de cada propietario y, a falta de títulos suficientes, por lo que resultare de la posesión en que estuvieren los colindantes. 31 LPRA Sec. 1212. Cuando los títulos no determinen el límite o área perteneciente a cada propietario y la cuestión no pudiera resolverse por la posesión o por otro medio de prueba, la parte de terreno que resulte sobrante en el deslinde pertenecerá al Estado Libre Asociado de Puerto Rico. 31 LPRA Sec. 1213.

*-B-*

El Artículo 1802 del Código Civil, 31 LPRA ant. sec. 5141, vigente a la fecha de los hechos del caso de autos, dispone que el que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado.[22] La culpa o negligencia "consiste en la falta del debido cuidado, por no anticipar ni prever las consecuencias de un acto u omisión, que una persona prudente y razonable habría de prever en las mismas circunstancias". *Cruz Flores v. Hospital Ryder Memorial, Inc.*, 210 DPR 465, 484 (2022) (énfasis suprimido); *Pérez Hernández v. Lares Medical Center, Inc.*, 207 DPR 965, 976-977 (2021).

En materia de daños y perjuicios para que prospere una reclamación bajo el citado Artículo, tiene que darse la concurrencia de tres elementos básicos a saber: (1) un acto u omisión culposo o negligente del demandado;

---

[22] En nuestro ordenamiento, aunque la normativa vigente es el Código Civil de 2020, la versión derogada era la que se encontraba vigente al momento de surgir la controversia de autos. En lo pertinente, el Art. 1815 establece lo siguiente: "La responsabilidad extracontractual, tanto en su extensión como en su naturaleza, se determina por la ley vigente en el momento en que ocurrió el acto u omisión que da lugar a dicha responsabilidad." 31 LPRA sec. 11720. Por tanto, para propósitos del presente caso, se hará referencia a las disposiciones de la legislación derogada.

(2) la presencia de un daño físico o emocional en el demandante y (3) que exista un nexo causal entre el daño sufrido y el acto u omisión. *Weber Carillo v. ELA*, 190 DPR 688 (2014); *Nieves Díaz v. González Massas*, 178 DPR 820, 843 (2010).

En lo pertinente, el daño se ha definido como "todo menoscabo material o moral causado contraviniendo una norma jurídica, que sufre una persona y del cual haya de responder otra". *Camacho Rivera v. Richard Mitchell, Inc.*, 202 DPR 34, 42 (citando a J. Puig Brutau, *Fundamentos de Derecho Civil*, Barcelona, Bosch, 1983, T. 2, Vol. 3, pág. 92); *López v. Porrata Doria*, 169 DPR 135, 151 (2006). El daño debe haberse infligido en contravención a una norma jurídica. *Nieves Díaz v. González Massas,* supra, pág. 845. De no existir daño o perjuicio, no existirá una obligación de indemnizar. *López v. Porrata Doria, supra*, pág. 151 (citando a J. Puig Brutau, *op. cit.*, pág. 91).

Los daños se dividen en patrimoniales y no patrimoniales. *Sagardía de Jesús v. Hosp. Aux. Mutuo*, 177 DPR 484, 505 (2009). Los primeros consisten en el menoscabo monetario sobre el patrimonio del perjudicado. *Íd.*, págs. 505-506. Por su parte, los daños no patrimoniales "son en principio aquellos cuya valoración en dinero no tiene la base equivalencial que caracteriza a los patrimoniales, por afectar precisamente a elementos o intereses de difícil valoración pecuniaria". *Íd.*, pág. 506 (citando a J. Santos Briz, *Tratado de Derecho Civil*, Barcelona, Bosch, 2003, T. III, pág. 457).

Ahora bien, además de la existencia de un daño real y un acto culposo o negligente, es esencial la existencia de un nexo causal para apoyar una reclamación en concepto de daños y perjuicios. La doctrina de causalidad dispone que "no es causa toda condición sin la cual no se hubiera producido el resultado, sino la que ordinariamente lo produce según la experiencia general". *Nieves Díaz v. González Massas*, 178 DPR 820, 844 (2010) (citando a *Sociedad de Gananciales v. Jerónimo Corp.*, 103 DPR 127,

134 (1974)). Este elemento es imprescindible, pues vincula al daño directamente con el hecho antijurídico. *Nieves Díaz v. González Massas*, *supra*, págs. 844-845. Además, el nexo causal está íntimamente ligado con la previsibilidad. *Íd.*, pág. 844.

Por otro lado, el juzgador debe medir los daños sobre una estricta base de correspondencia con la prueba presentada, procurando siempre que la indemnización no se transforme en una industria ni afecte la economía. En ese sentido, el deber de los jueces es conservar el sentido reparador y no punitivo que caracteriza a nuestro ordenamiento jurídico. *Agosto Vázquez v. F.W. Woolworth & Co.*, 143 DPR 76, 81 (1997); *Rivera v. Tiendas Pitusa, Inc.*, 148 DPR 695, 700 (1999).

-C-

Una vez se impone responsabilidad de conformidad con la normativa antes expuesta, surge el deber de resarcir al damnificado al otorgarle un valor económico al daño sufrido.[23] Esta tarea es una sumamente difícil, ardua y angustiosa, pues no existen fórmulas científicas que provean un resultado exacto para indicar cómo se justiprecia el dolor y el sufrimiento causado. *Id.*, al citar a *Santiago Montañez v. Fresenious Medical*, 195 DPR 476, 490 (2016) y otros.

En el proceso de valorización de los daños, los tribunales sentenciadores, además de examinar la prueba desfilada y considerar las circunstancias particulares del caso ante el tribunal, deberán evaluar "[...] las indemnizaciones concedidas en casos anteriores [,ya que éstas] constituyen un punto de partida y referencia útil para pasar juicio sobre las concesiones otorgadas por el foro primario. Ello es así[,] aun cuando reconocemos que no existen dos casos exactamente iguales y que cada caso es distinguible según sus circunstancias particulares. En todo caso, estas

---

[23] *Mena Pamias v. Jiménez Meléndez*, 212 DPR 758, 769 (2023) al citar a *García Pagán v. Shiley Caribbean, etc.*, 122 DPR 193, 206 (1988).

compensaciones otorgadas en casos anteriores deben ajustarse a su valor presente." *Id.*, a la pág. 770.

-D-

Como regla general, los tribunales revisores aceptan como correctas las determinaciones de hechos de los foros inferiores, sin intervenir con la apreciación y la adjudicación de credibilidad que realiza el juzgador de los hechos en relación con la prueba testifical. *Pueblo v. Negrón Ramírez*, 213 DPR 895 (2024). La Regla 42.2 de Procedimiento Civil, 32 LPRA Ap. V, R. 42.2, establece que las determinaciones de hechos que toma el foro primario a base de testimonio oral "no se dejarán sin efecto a menos que sean claramente erróneas, y se dará la debida consideración a la oportunidad que tuvo el tribunal sentenciador para juzgar la credibilidad de las personas testigos". *Ramírez Ferrer v. Conagra Foods P.R.,* 175 DPR 799, 810-811 (2009). Asimismo, la Regla 110 de Evidencia, 32 LPRA Ap. VI dispone que "será el juzgador de hechos quien deberá evaluar la prueba presentada con el propósito de determinar cuáles hechos fueron establecidos o demostrados".

Por tal razón, es norma reiterada que cuando se le solicita a un foro apelativo que revise cuestiones de hechos, la apreciación de la prueba, en primera instancia, le corresponde al tribunal sentenciador ya que estos tienen la oportunidad de observar y oír a los testigos, y por ello, están en mejor posición de evaluarla. *Pueblo v. Acevedo Estrada*, 150 DPR 84, 98-99 (2000); *López Vicil v. ITT Intermedia, Inc.,* 142 DPR 857, 865 (1997). En ese sentido, la evaluación del foro sentenciador merece respeto y deferencia. *González Hernández v. González Hernández*, 181 DPR 746, 776 (2011).

Ante ese cuadro, "los tribunales apelativos no intervenimos ni alteramos innecesariamente las determinaciones de hechos que hayan formulado los tribunales de primera instancia luego de admitir y aquilatar la prueba presentada durante el juicio". *Suárez Cáceres v. Com. Estatal Elecciones*, 176 DPR 31, 65 (2009). No debemos descartar las determinaciones

"tajantes y ponderadas del foro de instancia" y sustituirlas por nuestra propia apreciación, a base de un examen del expediente del caso. *Íd.*, págs. 65-66.

Ahora bien, el respeto al arbitrio del juzgador de hechos "no es absoluto" pues "[u]na apreciación errónea de la prueba no tiene credenciales de inmunidad" frente a nuestra función revisora. *Ramos Acosta v. Caparra Dairy, Inc.*, 113 DPR 357, 365 (1982); *Vda. de Morales v. De Jesús Toro*, 107 DPR 826, 829 (1978). Los foros apelativos podremos intervenir con la apreciación de la prueba cuando exista error manifiesto, pasión, prejuicio, parcialidad o cuando un análisis integral, detallado y minucioso de la prueba así lo justifique. *Pueblo v. Casillas, Torres*, 190 DPR 398, 426 (2014); *González Hernández v. González Hernández*, *supra,* pág. 777. Esto sin olvidar que "la intervención indiscriminada con la adjudicación de credibilidad que se realiza a nivel de instancia significaría el caos y la destrucción del sistema judicial existente en nuestra jurisdicción". *Pueblo v. Toro Martínez*, 200 DPR 834, 859 (2018).

En cuanto al prejuicio, pasión o parcialidad, existen si el juzgador "actúa movido por inclinaciones personales de tal intensidad que adopta posiciones, preferencias o rechazos con respecto a las partes o sus causas que no admiten cuestionamiento, sin importar la prueba recibida en sala e incluso antes de que se someta prueba alguna". *Dávila Nieves v. Meléndez Marín*, 187 DPR 750, 782 (2013). Se consideran erróneas las conclusiones del foro apelado, si de un análisis de la totalidad de la prueba, el foro apelativo entiende que esta se distancia de la realidad fáctica o es inherentemente imposible o increíble. *Pueblo v. Irizarry*, 156 DPR 780, 816 (2002).

En cambio, el error manifiesto ocurre cuando, de un análisis de la totalidad de la evidencia, el tribunal apelativo queda convencido de que se cometió un error, aunque haya evidencia que sostenga las conclusiones de hecho del Tribunal. *Gómez Márquez et al. v. El Oriental*, 203 DPR 783, 793

(2020). Este estándar de revisión restringe nuestra facultad para sustituir el criterio del foro primario a escenarios en que, de la prueba admitida, no exista base suficiente que apoye su determinación. *Íd*. Diferencias de criterio jurídico no alcanzan ese estándar. *Íd.*

Así, únicamente intervendremos con este tipo de determinaciones de hechos cuando un análisis integral de tal prueba cause en nuestro ánimo una insatisfacción o intranquilidad de conciencia tal que estremezca nuestro sentido básico de justicia. *Rivera Menéndez v. Action Services*, 185 DPR 431, 444 (2012); *S.L.G. Rivera Carrasquillo v. A.A.A.*, 177 DPR 345, 356 (2009).

Expuesta la normativa jurídica pertinente, procedemos a disponer del asunto ante nos.

**III.**

En el presente caso, como único señalamiento de error, la parte apelante aduce que el foro de instancia se equivocó al denegar la causa de acción sobre daños y perjuicios que fue acumulada en el caso de autos. Esencialmente, la parte apelante arguye que, conforme a la sanción de la sentencia en rebeldía contra la parte apelada, una vez el Tribunal da por admitidos los hechos bien alegados en la demanda, tales hechos se estiman probados. Así pues, plantea que la determinación apelada es errónea, pues es contraria a las determinaciones de hechos establecidas por el Tribunal, las cuales justifican la compensación por los daños derivados de la privación ilegal del uso y disfrute de la propiedad. Evaluemos.

Surge del recuento del trámite procesal del caso, que, en la causa de epígrafe se dictó *Sentencia Parcial en Rebeldía* en contra de la parte apelada. Como resultado de esto, el foro primario declaró Ha Lugar la causa de acción de reivindicación presentada por la parte apelante. Habiéndose así resuelto, conforme el derecho vigente, quedó pendiente solamente el determinarse el valor de los daños reclamados por esta.

Cabe mencionar que, con relación a los daños y perjuicios reclamados por la parte apelante, en la demanda se alegó lo siguiente:

Como consecuencia de las acciones ilegales y omisiones legales de la parte demandada, y de su culpa y/o negligencia exclusiva y directa, los demandantes han sufrido daños y perjuicios, los cuales se estiman en una cantidad no menor de $25,000.00. Los referidos daños persisten al día de hoy y mientras no sean reparados mediante la reivindicación oportuna de la franja de terreno o porción de terreno que los demandados usurpan y ocupan ilegalmente y el resarcimiento monetario de éstos son permanentes pues continúan afectando el derecho propietario de los demandantes e inciden en dicho derecho diluyendo las propiedades inherentes que suponen el derecho real que éstos tienen.

De una lectura de tal alegación no es posible particularizar los daños y perjuicios reclamados y su relación causal con las acciones u omisiones de la parte apelada. Ahora, durante la audiencia celebrada por el tribunal para valorizar los daños, la señora Carmona Collazo declaró acerca de los menoscabos que sufrió y por los que se reclamó compensación. En la sentencia apelada, el foro primario detalló los daños testificados por esta; a saber: el pago de arrendamiento por no poder construir su residencia; los gastos de utilidades (agua y electricidad); la venta de un automóvil para costear los gastos relacionados al litigio; los gastos de mantenimiento del predio; y sus daños emocionales.

En cuanto al pago de arrendamiento, el foro primario dictaminó que, toda vez que la parte apelante no precisó en qué fecha del año 2018 comenzó a residir en una vivienda alquilada, estaba impedido de determinar el total de pagos en dicho concepto. Sobre el mismo particular, también enunció que la prueba desfilada no estableció que la parte apelante hubiera intentado comenzar la construcción de su residencia o que, la apelada hubiese impedido "con algún acto afirmativo, realizar dicha construcción." Así, destacó, que, por el contrario, del testimonio de la señora Carmona Collazo se desprendía que, ante la incertidumbre sobre la colindancia, voluntariamente se decidió no comenzar la edificación de la vivienda, por

lo que no se constituyó una causa de acción que ameritara la concesión de un remedio.

De otra parte, sobre los gastos de utilidad, el foro primario decretó que no se presentó prueba sobre los costos implicados por tales cuentas, lo que le impedía determinar compensación alguna por ello. De otra parte, sentenció que la venta del automóvil respondió a la necesidad de pagar los costos relacionados con el litigio de epígrafe, más no se estableció el daño específico sufrido a consecuencia de esto.

Al mismo tiempo, en lo concerniente a los gastos de mantenimiento del predio, el TPI sentenció que la parte apelante falló en establecer un nexo causal entre las acciones u omisiones de la apelada y la necesidad de brindarle mantenimiento al predio, por lo que tampoco habría de concedérsele una compensación por tales gastos. Finalmente, el foro primario encontró probado que la señora Carmona Collazo, ha estado padeciendo de depresión, ansiedad y dificultad para dormir, necesitando varios medicamentos para atender estas situaciones. No obstante, destacó que conforme el propio testimonio vertido durante la vista de daños, las condiciones emocionales y anímicas de la señora Carmona Collazo eran atribuibles al procedimiento judicial y la incertidumbre de su desenlace y no a algún acto u omisión intención o negligente por parte de la apelada.[24] Como consecuencia de su análisis, el TPI denegó la causa de acción sobre daños y perjuicios incluida en la *Demanda*.

Para poder atender adecuadamente los reclamos de la parte apelante, nos dimos a la tarea de escuchar la regrabación de la vista de daños. Así hecho, coincidimos con la apreciación de la prueba efectuada por el foro primario. Efectivamente, nos parece correcta su evaluación en cuanto a que el testimonio de la señora Carmona Collazo no demostró acto

---

[24] Es meritorio aclarar que la decisión que hoy alcanzamos no implica que estemos en desacuerdo con la apreciación que el foro primario hizo de la prueba recibida durante la vista de daños que se celebró en el caso.

afirmativo alguno de la parte apelada que le impidiera construir su residencia en el terreno objeto de controversia. Por el contrario, según su propia declaración, ello no había sucedido porque tuvo que invertir en abogado, en gastos judiciales y en los gastos de mantenimiento del terreno sin poder usarlo. Inclusive, por sus propias palabras, no ha construido porque hasta que no tenga claro y estén los puntos de colindancia como tienen que ser no lo va a hacer.[25]

De igual forma, encontramos correcta su percepción en cuanto a que el testimonio de la señora Carmona Collazo carece de detalle específico en cuanto a las cuantías pagadas por la parte apelante por agua y electricidad en el predio de terreno, así como del daño específico sufrido como consecuencia de la venta del automóvil. La ausencia de prueba concreta en cuanto a estas partidas ciertamente no justifica la concesión de un remedio en favor de parte apelante por estas.

Al mismo tiempo, basándonos en la declaración de la señora Carmona Collazo durante la vista de daños, opinamos que la determinación del TPI en cuanto a la inexistencia de un vínculo entre las acciones u omisiones de la parte apelada y la necesidad de dar mantenimiento al predio fue correcta. De este modo, el foro primario no se equivocó al no conceder en favor de la parte apelante cantidad alguna por los gastos de mantenimiento del terreno. Tampoco fue errada la falta de compensación por los daños emocionales reclamados por la parte apelante decretada por el tribunal. Si bien es cierto que la señora Carmona Collazo identificó como parte de los daños emocionales que ha sufrido depresión, trastorno de ansiedad y del sueño, esta misma manifestó que ello ocurre una vez comenzó el trámite judicial.[26]

---

[25] Regrabación de la vista de daños. 11:11 a 11:39 y 12:48 a 12:58.
[26] Regrabación de la vista de daños, 23:17 a 25:09.

Ahora bien, al examinar las determinaciones de hechos formuladas por el TPI en la *Sentencia Parcial en Rebeldía* dictada en el caso el 13 de mayo de 2025, vemos que en la causa de epígrafe, por habérsele eliminado las alegaciones a la apelada, es un hecho dado por cierto que la parte apelada **ocupó una franja de terreno de la parte apelante, de manera ilegal y sin justo título.**[27] De igual manera, y por la misma razón, se dio por cierto que **tal ocupación ilegal perturbó el derecho real de la parte apelante e impidió y obstaculizó así el uso y disfrute de su propiedad.**[28] Ciertamente, tales hechos constituyen un menoscabo que justifica la concesión de un remedio, pues el disfrute de la propiedad es un derecho fundamental consagrado en el Artículo II, Sección 7 de la Constitución del Estado Libre Asociado de Puerto Rico, LPRA, Tomo 1. Por consiguiente, resta pues que el foro de instancia- basándose en aquella jurisprudencia relativa a la concesión de daños por menoscabo del uso y disfrute de la propiedad- y de conformidad con las circunstancias particulares del presente caso realice el correspondiente ejercicio de valorización de daños.

Por los fundamentos anteriormente expuestos, se devuelve el caso al Tribunal de Primera Instancia para que proceda a determinar la compensación adecuada que debe recibir la parte apelante por el menoscabo sufrido por esta sobre el uso y disfrute de su propiedad. Ello, de conformidad con la normativa vigente ateniente a la valorización de daños enunciada en la presente sentencia.

## IV.

Por los fundamentos antes expuestos, se revoca la *Sentencia* dictada en el caso, a los únicos fines de establecer que la parte apelante tiene derecho a recibir compensación por el menoscabo del uso y disfrute de su propiedad. Por lo tanto, se devuelve el caso al foro recurrido para que,

---

[27] Véase determinaciones de hechos 3, 4 y 6 de la *Sentencia Parcial en Rebeldía*, Entrada Núm. 161, SUMAC TPI.

[28] *Íd.*, determinación de hecho número 8.

conforme a lo aquí resuelto, realice el correspondiente ejercicio de valorización de daños exclusivamente en cuanto a dicho perjuicio.

Lo acordó y manda el Tribunal, y lo certifica la Secretaria del Tribunal.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones